Cyrus ZAL, Petitioner–Appellant,

v.

Cecil STEPPE, Warden;  Attorney General of The State of California, Respondents–Appellees.

No. 91–55579.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1992.

Decided July 1, 1992.

As Amended July 31, 1992.

Stephen E. Hurst, The Rutherford Institute of California, Cyrus Zal, Encinitas, Cal., pro per., for petitioner-appellant.

David Florance, Deputy County Counsel, San Diego, Cal., for respondents-appellees.

Before: FARRIS, NOONAN, and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

Cyrus Zal, an attorney, appeals the district court's denial of his habeas corpus petition, which challenged his state court contempt citations for violating the trial court's evidentiary orders. Zal argues that the citations are void because the orders violated his First Amendment rights, his clients' Sixth and Fourteenth Amendment rights, and the Fifth and Fourteenth Amendment rights of the unborn. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 (1988) and 2253 (1988). We affirm.

## FACTS

Zal represented seven abortion protestors who were charged with criminal trespass. During *in limine* proceedings, the trial court excluded the defenses of: (1) necessity; (2) defense of others; (3) compliance with international law, treaties, or declarations; and (4) mistake of fact. The judge also ordered him not to use the following words, which were linked to the excluded defenses:

| | |
|---|---|
| kill | bloodletting |
| killer | killing |
| baby killer(s) | killing centers |
| murder(er) | fetus |
| deathscort | abortuary |
| holocaust | rights of the unborn |
| abortion | rescuer |
| death mill | Hitler |
| unborn | slaughter |
| Nazi(ism) | childslaughter |
| manslaughter | destroy |
| slay(ing) | extermination |
| destruction | martyrdom |
| sacrifice | homicide |
| execution | fratricide |
| genocide | parricide |
| sororicide | aborticide |
| infanticide | butcher(y) |
| feticide | carnage |
| monster | bloodbath |
| massacre | mass destruction |
| decimation | assassin |
| Cain | thug |
| cutthroat | eradication |
| gorilla | monstrosity |

Although the record does not contain the trial court's orders, which apparently were made orally, Zal has provided a list and counsel for California has not disputed any word on the list, either in their brief or at oral argument. We assume that the list is accurate.

Despite the court's evidentiary orders and repeated warnings, Zal asked witnesses the following questions:

Is that the place where they empty the contents of a woman's uterus?

Are you familiar with those facilities where two persons go in and only one person comes out alive?

Can't we ask anything about this baby-killing, Your Honor?

What time do the first victims arrive?

How do you feel about making a living off the blood of babies?

Are your paychecks bloodstained?

Is the unborn baby a life you have sworn to protect?

Did you feel any obligation to protect the children who would be killed that day?

Officer, were you an unborn baby at some time in your life?

Wasn't the safety corridor the place where babies were taken to be killed?

How long have you been in the baby-killing business?

Does the oath you have taken to tell the truth mean anything to someone who is in the baby killing business?

What's done with the bodies of the babies killed by your employer?

Where do the bodies go?

Are you concerned that you may some day be charged with murder for your role in the abortion holocaust?

Did you know what babies they were referring to?

Do you know the time, date and place where a life was going to be taken?

What do you do when your oath to protect life conflicts with your duties?

Do you think perhaps the dog knew the duty to protect life better than the police officers?

Do you think you will always protect the baby-killers?

Are those convictions worth the lives of unborn babies?

Now, is it from your own personal knowledge that you know two babies were saved from abortions that day?

Isn't that a poster of an unborn child sucking its thumb?

Zal occasionally was given a single contempt citation for several questions. In sum, Zal was held in contempt twenty times.

It is not disputed that Zal knowingly and intentionally flouted the trial court's orders excluding certain defenses. At oral argument, Zal candidly admitted that he violated the orders in service of a "higher law." Zal's intent was to reach the jury on the precluded defenses and prompt it to use its powers of nullification. The prohibited words were taken from Zal's attempts to accomplish the same mischief in previous cases.

### STANDARD OF REVIEW

We review the district court's denial of Zal's habeas petition *de novo*. *See Mikes v. Borg,* 947 F.2d 353, 356 (9th Cir.1991). "We give deference to the state court's findings of the underlying facts, but reserve the right to give different legal weight to such facts." *Reiger v. Christensen,* 789 F.2d 1425, 1428 (9th Cir.1986).

### DISCUSSION

1. *Jurisdiction*

■ We recognize two possible jurisdictional questions. First, since filing his petition, Zal has served his full sentence and no longer is in state custody.

Generally, a petition for habeas corpus becomes moot should a prisoner be released from custody before the court has addressed the merits of the petition. However, the courts recognize an exception in those cases where the prisoner can show that he will suffer some collateral legal consequences if the challenged conviction is allowed to stand.

*Robbins v. Christianson,* 904 F.2d 492, 494 (9th Cir.1990) (citations omitted). Zal risks being disciplined by the California State Bar if his contempt citations are allowed to stand. His petition is not moot.

■ Second, "relief under [28 U.S.C. § 2254(a) (1988)] can be granted only for a violation of the United States Constitution,

a federal statute, or a treaty." *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985). The California Supreme Court has held:

> In this state it is clearly the law that the violation of an order in excess of the jurisdiction of the issuing court cannot produce a valid judgment of contempt.... "Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory decision, or rules developed by the courts ... are in excess of jurisdiction."

*In re Berry*, 68 Cal.2d 137, 65 Cal.Rptr. 273, 280, 436 P.2d 273, 280 (1968) (in bank) (quoting *Abelleira v. Dist. Court of Appeal*, 17 Cal.2d 280, 109 P.2d 942, 948 (1941)). Zal argues that the contempt citations are void because the trial court's evidentiary orders violated, *inter alia*, his First Amendment rights. We have noted that "attorneys ... do not lose their constitutional rights at the courthouse door." *Levine v. United States Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 595 (9th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). Zal's petition presents a federal claim.

■ Section 2254(a) also requires that Zal be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In *Walker v. City of Birmingham*, 388 U.S. 307, 320–21, 87 S.Ct. 1824, 1831–32, 18 L.Ed.2d 1210 (1967), the Supreme Court upheld Alabama's procedural rule that a party cannot collaterally challenge the constitutionality of a court order after violating that order. In *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 725 (9th Cir.1989), we noted that "the collateral bar rule permits a judicial order to be enforced through criminal contempt even though the underlying decision may be incorrect and even unconstitutional." But, although a state *may* adopt the collateral bar rule, it need not do so as a matter of federal law. Since California has explicitly

elected not to do so, *see Berry*, 436 P.2d at 281 ("a person, under California law, may disobey the order and raise his jurisdictional contentions when he is sought to be punished"), we can address the merits of Zal's First Amendment claim.

In so holding, we recognize that this case differs markedly from *Bishop v. Kelso*, 914 F.2d 1468 (11th Cir.1990), and similar cases. The *Bishop* court, on habeas review, applied the sufficiency of the evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979), rather than the more demanding standard prescribed by state law. *See Bishop*, 914 F.2d at 1472–73. The court held that "[o]nly in a case where the failure to meet a higher state burden of proof raises independent constitutional concerns ... would a federal court on collateral review examine the evidence to determine whether the state had met its self-imposed burden." *Id.* at 1473. This case does not involve a state substantive standard that is more demanding than the corresponding federal standard. Zal argues that the trial court's evidentiary orders violated the First, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. There is but one *substantive* standard—that prescribed by federal law. Unlike *Walker*, these claims are not foreclosed by a state *"procedural* requirement." 388 U.S. at 319, 87 S.Ct. at 1831 (emphasis added).

*2. Zal's First Amendment claims*

■ Zal argues that the contempt citations are void because the trial court's evidentiary orders violated his First Amendment rights. We reject Zal's argument for the reasons set forth in *Sacher v. United States*, 343 U.S. 1, 8–9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952) (emphasis added):

> Our criminal processes are adversary in nature and rely upon the self-interest of the litigants and counsel for full and adequate development of their respective cases. The nature of the proceedings presupposes, or at least stimulates, zeal in the opposing lawyers. But their strife can pervert as well as aid the judicial

process unless it is supervised and controlled by a neutral judge representing the overriding social interest in impartial justice and with power to curb both adversaries. The rights and immunities of accused persons would be exposed to serious and obvious abuse if the trial bench did not possess and frequently exert power to curb prejudicial and excessive zeal of prosecutors. The interests of society in the preservation of courtroom control by the judges are no more to be frustrated through unchecked improprieties by defenders.

Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts. *But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal.* During a trial, lawyers must speak, each in his own time and within his allowed time, and with relevance and moderation. These are such obvious matters that we should not remind the bar of them were it not for the misconceptions manifest in this case.

In *Gentile v. State Bar of Nevada,* — U.S. ——, 111 S.Ct. 2720, 2743, 115 L.Ed.2d 888 (1991), the Court similarly noted that "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal." The trial court's evidentiary orders did not infringe Zal's right to preserve his or his clients' right to appeal. In fact, he could have followed the procedure for an interlocutory appeal following the pretrial ruling. We therefore hold that the orders did not violate the First Amendment.

■ Zal argues that the "clear and present danger" standard should guide our analysis because the trial court's evidentia-

ry orders are "prior restraints." This argument is contrary to *Gentile,* 111 S.Ct. at 2744, which held that "lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press in *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539 [96 S.Ct. 2791, 49 L.Ed.2d 683] (1976)." Although *In re Little,* 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708 (1972) (per curiam), applies a test similar to the clear and present danger test to an attorney's in-court conduct, the attorney in *Little* was punished for violating a general contempt statute that proscribed "[d]isorderly, contemptuous, or insolent behavior ... tending to interrupt [the court's] proceedings, or to impair the respect due to its authority." *Id.* at 555 n.*, 92 S.Ct. at 660 n.* (quoting N.C.Gen.Stat. § 5–1(1) (1969)). *See also Eaton v. City of Tulsa,* 415 U.S. 697, 697, 94 S.Ct. 1228, 1229, 39 L.Ed.2d 693 (1974) ("direct contempt," in violation of Tulsa ordinance). In *Matter of Contempt of Greenberg,* 849 F.2d 1251, 1255 (9th Cir.1988) (construing Fed.R.Crim.P. 42(a)), we similarly concluded that "summary criminal contempt procedure should be used only in exceptional circumstances where there is an immediate threat to the judicial process." Zal intentionally violated a specific court order; *Little* and *Greenberg* are inapposite.

Judge Noonan similarly misinterprets applicable case law. The Court in *Sacher* did not hold that a party must "make impossible an orderly and speedy discharge of the case," *infra* at 935 (quoting *Sacher,* 343 U.S. at 4, 72 S.Ct. at 452), in order to be held in contempt. *Gentile* reaffirms *Sacher*'s holding: "if the ruling is adverse, it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal." *Sacher,* 343 U.S. at 9, 72 S.Ct. at 455. *See Gentile,* 111 S.Ct. at 2743. Contrary to Judge Noonan's suggestion, *see infra* at 935, this holding is not altered by *Berry* and its progeny; these cases provide *only* that a contempt citation is void if the underlying order is unconstitutional. *See Berry,* 436 P.2d at 280.

■ Judge Noonan also emphasizes that various questions asked by Zal did not *specifically* violate the trial court's evidentiary orders. *See infra* at 935. Zal did not raise this argument in his briefs or at oral argument because it nevertheless is clear that he intentionally violated the trial court's orders excluding certain defenses. The *only* question before us is who controls the trial. Under our current system, the trial judge is charged with preserving the decorum that permits a reasoned resolution of issues. Zealous counsel cannot flout that authority behind the shield of the First Amendment. We hold nothing more.

### 3. *Zal's other claims*

Zal argues that the contempt citations are void because the trial court's evidentiary orders violated: (1) his clients' Sixth Amendment rights to a trial by jury and effective assistance of counsel; (2) his clients' Fourteenth Amendment right to due process of law; and (3) the Fifth and Fourteenth Amendment rights of the unborn. We address the argument without deciding whether a fetus has Fifth and Fourteenth Amendment rights. Although there is a "general prohibition on a litigant raising another person's legal rights," *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), Zal is entitled to raise these claims under *Berry*. *See* 436 P.2d at 280 ("violation of an [un-constitutional] order ... cannot produce a valid judgment of contempt"). Zal has alleged "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen*, 468 U.S. at 751. Zal also can be expected to present the issues "with the necessary adversary zeal." *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.* 467 U.S. 947, 956, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984).

■ The trial court's evidentiary orders sought to ensure that the excluded defenses—(1) necessity, (2) defense of others, (3) compliance with international law, treaties, or declarations, and (4) mistake of fact— would not be presented to the jury through a back door. It follows that the evidentia-ry orders did not violate Zal's clients' Sixth and Fourteenth Amendment rights unless the court erred, as a matter of *federal law*, in excluding those defenses. Zal essentially is arguing that the orders prevented the jury from fully appreciating why his clients acted unlawfully; there can be no constitutional violation if Zal had no right to present the excluded defenses. Zal had no constitutional right to present evidence merely "to bring out the reason for his clients' actions." *Infra* at 934.

Zal's argument fails. In order to invoke the necessity defense, a party must show that: "(1) they were faced with a choice of evils and chose the lesser evil; (2) they acted to prevent imminent harm; (3) they reasonably anticipated a direct causal relationship between their conduct and the harm to be averted; and (4) they had no legal alternatives to violating the law." *United States v. Schoon*, 955 F.2d 1238, 1239–40 (9th Cir.1991) (citation omitted). Zal's clients were not seeking to avert a legally recognized harm. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). They also had legal alternatives to violating the law. There is no necessity defense in these circumstances. The Third Circuit similarly concluded in *Northeast Women's Center v. McMonagle*, 868 F.2d 1342, 1350–52 (3rd Cir.), *cert. denied*, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989), that the justification defense was unavailable to abortion protestors under both federal and state law. That court rightfully stated:

> We emphasize in particular the numerous legal alternatives that Defendants had available to pursue their goal of persuading women not to have abortions. For example, they could continue to march, go door-to-door to proselytize their views, distribute literature, personally or through the mails, and contact residents by telephone, short of harassment.

*Id.* at 1352. Zal cites no federal case law that creates a constitutional right to present any of the excluded defenses. We understand Zal's argument, but the trial

court's evidentiary orders were not constitutionally infirm.

AFFIRMED.

TROTT, Circuit Judge, concurring.

I concur in Judge Farris' opinion. However, I feel compelled to add a few words about what I see as the two central issues in this case: the Sixth Amendment "right" to jury nullification of the law, and the First Amendment "right" of an attorney (or his client) to speak freely in a courtroom. I conclude that clients have no right to jury nullification, and that lawyers have no independent First Amendment rights in the courtroom.

Zal claims the trial court's order violated his clients' Sixth Amendment rights, both to a jury trial, and to effective assistance of counsel. He argues he had a right to disobey the court order because his clients had a right to explain themselves (through Zal) to the jury. Judge Noonan's concurring and dissenting opinion picks up on this theme as well:

> The first step in making a defense is to explain why the defendant did what he did....
>
> As counsel for those accused of a crime, Zal had an obligation to them to present their defense.... Zal, accordingly, had the right to bring out the reason for his clients' actions[,] *[e]ven if the reason for the actions did not constitute a good defense under applicable law....*

Judge Noonan's opinion at 934 (emphasis added). I have two main disagreements with this argument.

First, the argument simply fails to come to grips with Zal's admitted central purpose: to brush aside the court's rulings on the precluded defenses and to prevail wrongfully on the jurors to exercise their illegitimate power of nullification. Such a fundamentally lawless act in a court of law is not protected by the Constitution. To deny an attorney this type of "explanation" is certainly not to deny a defense or right to effective representation. Such an outlandish claim misapprehends the nature of a lawsuit. Indeed, left unchecked, such a practice would allow an attorney intentionally to deprive his *opponent* of a fair trial and due process of law. Had Zal succeeded, the trial would have been reduced to a free-for-all, in which the laws enacted by the people through their democratically elected representatives effectively would have been ignored and repealed.

I believe neither a defendant nor his attorney has a right to present to a jury evidence that is *irrelevant* to a *legal* defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, *not* on jury nullification as urged by either litigant. *See Chandler v. Florida,* 449 U.S. 560, 574, 101 S.Ct. 802, 809, 66 L.Ed.2d 740 (1981) ("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."). If society deems important certain "explanations," those explanations explicitly can become part of the law. But until then, we should not allow litigants to slip through the back door when the front door is locked. Until then, Zal's "explanations" will be relevant only to sentencing, not to a determination of guilt or innocence. I therefore strongly disagree with Judge Noonan's contrary conclusion. *See* Judge Noonan's opinion at 934.

Second, I agree with the ultimate conclusion of Judge Noonan's opinion that Zal's clients did in fact have the opportunity to explain themselves, as the following excerpt from oral argument reveals:

> Judge Noonan: Did you put a witness on who testified that he was acting out of necessity?
>
> Zal: Well ...
>
> Judge Noonan: Well, can't you answer that yes or no?
>
> Zal: I can answer it yes or no, and *I need to clarify something that was unfortunately not stated in the facts—and this may make a difference in the Justices' [sic] consideration of this case. When we finally—this case is on appeal on the normal channel, and when we finally went back over with the—I'll get to your question Your Honor—the prose-*

*cution and I and we went over the record....*

Judge Farris: You may get to it after we stop listening and that could be somewhat detrimental to your case.

Zal: Okay. Well, yes, the, with the court's approval, each defendant was allowed to say one time the reason that he blocked those doors. One time, one time only. Defense counsel was not allowed to pursue that line of questioning. In closing arguments I was not allowed to allude to the fact that each client testified that he was there to save the lives of unborn children. *So to answer your question, with the court's approval, the court said that each defendant one time may say, may testify as to the reason he was there blocking the doors and each defendant that testified did that.*

Judge Noonan: So you weren't sanctioned for that?

Zal: No, I was not sanctioned for that.

(Emphasis added.)

The fact that Zal is not satisfied with what he received only emphasizes how easily his approach can undermine due process. If we take seriously Zal's argument—if we allow lawyers to appeal for jury nullification at will and indefinitely, and if we grant defendants a Sixth Amendment right to explain themselves in legally irrelevant terms—then we move to a "system" in which the loudest voice carries the day, in which the phrase "order in the court" literally has no meaning, and in which the law has about as much force as the Cheshire Cat's grin.

Zal also argues the trial court's order violates the First Amendment because it infringes on his own right to free speech. He states, "attorneys retain their First Amendment rights even as participants in the judicial process." In support of this proposition, he cites cases articulating the First Amendment rights of lawyers to speak outside the courtroom, and implicitly seeks to extend the reasoning of those cases to inside the courtroom. Judge Noonan's opinion echoes this approach: "we have already held that 'attorneys and other trial participants do not lose their constitutional rights at the courthouse door.'" Judge Noonan's opinion at 934 (quoting *Levine v. United States Dist. Court for the Cent. Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir.1985), a case involving restrictions on out-of-court communications with the media).

I believe a lawyer properly functioning as such on behalf of a client has no independent First Amendment rights in the courtroom. *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), and *Gentile v. State Bar of Nevada*, — U.S. ——, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991), the two leading Supreme Court cases in this area, essentially hold that in court, an attorney's objection to an adverse ruling *is* his First Amendment remedy. As the Court stated in *Gentile*, 111 S.Ct. at 2743: "It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal."

I believe *Sacher* and *Gentile* are potentially misleading: although they discuss the in-court First Amendment rights of lawyers, in fact those rights do not have any independent substance. In the courtroom, during a judicial proceeding, an attorney's "First Amendment" rights depend exclusively on his client's trial rights. The attorney may speak only to the extent that his client's rights allow him to speak. That is why *Gentile* uses quotation marks when it discusses a lawyer's right to "'free speech'" in the courtroom. *Id.*

Indeed, even Zal presumably believes the First Amendment does not protect a lawyer who "speaks" in a way that presents to the jury irrelevant or prejudicial evidence. A lawyer may not filibuster a trial. The only time Zal would claim a First Amendment remedy is when the "speech" excluded was *improperly* excluded. And the operative word, "improper," obtains its meaning by reference to the *client's trial rights.*

Traditional First Amendment analysis also supports the idea that lawyers (and others) have no First Amendment right to speak freely in a courtroom: a courtroom is not a public forum in the technical sense that this terminology is used in free-speech analysis. *See Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985) (traditional public fora are "those places which 'by long tradition or by government fiat have been devoted to assembly and debate'" (citation omitted)). Although courtrooms have always been devoted to debate, they have never been devoted to free debate, but only to debate within the confines set by the trial judge and the rule of law. The First Amendment does not allow an attorney to speak beyond those confines.

The rhetorical force of this point is illustrated by a consideration of the First Amendment rights of other trial participants. Does a juror have a First Amendment right to speak or to examine witnesses? Does a court reporter have a right to editorialize during closing arguments? May spectators chafe, chant, and cheer? Could an anti-abortion advocate appear and deliver a right-to-life speech to the jury about to deliberate on the charges against Zal's clients? I would think not. And I would think a lawyer representing a client is distinguishable from these other participants *only because of the client.* In a courtroom, a lawyer without a client is like an actor without a part: he has no role to play, and no lines to deliver.

Nor am I convinced by Judge Noonan's argument that the trial court's order violated Zal's *clients'* First Amendment rights. *See* Judge Noonan's opinion at 934–35 (Zal "was not exercising his own First Amendment right. His speech was used for his clients. It is fair to measure his right by theirs."). If a plaintiff or defendant has no trial right to present evidence or testimony, then the evidence or testimony may not be presented. In a courtroom, during a judicial proceeding, the First Amendment simply does not protect speech which exceeds the speaker's trial rights. Until today, I would have thought this proposition too obvious for comment.

*In re Little,* 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972) (per curiam), cited on pages 934–35 of Judge Noonan's opinion, is not to the contrary. *Little* reversed the summary contempt conviction of a pro se petitioner who stated in closing argument that the trial court was biased against him, and that he was a political prisoner. *Id.* at 554–56, 92 S.Ct. at 659–61. (Little also called the judge a "'M—— F——,'" but that outburst was not involved in the case. *Id.* at 554, 92 S.Ct. at 660.) The Supreme Court focused on the lack in Little's case of a threat to the administration of justice. *Id.* at 555–56, 92 S.Ct. at 660–61. Although it cited language from a First Amendment case, *Craig v. Harney,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947), *cited in Little,* 404 U.S. at 555, 92 S.Ct. at 660, the Court's holding was based on a different Constitutional provision, the Due Process Clause. "The reversal of this conviction is necessarily required under our holding in *Holt v. Virginia....*" *Little,* 404 U.S. at 556, 92 S.Ct. at 660.

*Holt v. Virginia,* 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965) (Black, J.) (8–1), reversed contempt convictions imposed for the filing of motions for a change of venue due to perceived bias in the trial judge. *Id.* at 132–33, 85 S.Ct. at 1375–76. The *Holt* Court reversed the convictions because petitioners had a *due process* right to file the motions: "since 'A fair trial in a fair tribunal is a basic requirement of due process,' it necessarily follows that motions for change of venue to escape a biased tribunal raise constitutional issues both relevant and essential." *Id.* at 136, 85 S.Ct. at 1378 (citation omitted). The contempt was improper because the motions filed were part of "the right to present a defense" in the underlying case. *Id.* at 137, 85 S.Ct. at 1378.

Both *Holt* and *Little* are based on the parties' trial rights, not on their First Amendment rights, and not on the First Amendment rights of their lawyers. The language in *Little* concerning threats to the administration of justice only reinforces that point: the lawyer may speak only to

the extent necessary to protect his client from an improper administration of justice, and he may *not* speak to the extent that he threatens the corresponding rights of the opposing party.

In sum, I concur in Judge Farris' opinion because I do not believe parties to a lawsuit or their attorneys have independent free-speech rights in a courtroom. Zal's clients did not have a federal Constitutional right to have the prohibited words used in an attempt to encourage jury nullification. Given that conclusion, it is clear that neither Zal nor his clients had a First Amendment right to use the words. Hence Zal's custody does not offend the Constitution, laws, or treaties of the United States, and he has no remedy on federal habeas corpus.

NOONAN, Circuit Judge, concurring in the result in part and dissenting in part:

This difficult case presents serious questions as to the professional duties of a lawyer in court, the First Amendment, the Sixth Amendment, and the breadth of a contempt order. I concur in part in the judgment, and write separately because of some difference in my perspective and analysis from that of my two brothers.

### The Order Violated

To begin with, so far as I can see, Cyrus Zal was in violation only of the *in limine* word-ban of the municipal court. He did not present a necessity defense and after the municipal court ruled on January 19, 1991 that a mistake of fact defense was the equivalent of a necessity defense, he did not persist in presenting this defense. Eight times he used phrases that alluded to the abortion issue but were not on the list of forbidden words. I question whether these indirect allusions to abortion fell within an order which, for criminal purposes, should be strictly construed. This language had not been made punishable. The municipal court chose to rule in terms of words. It could not extend its prohibition by analogy.

Zal did violate the word-ban thirteen times by using forbidden words. I focus on these thirteen instances where forbidden language was employed.

### Zal's Duty As Counsel

For any human being accused of an offense an explanation of why he or she acted is important. An act without purpose is a subhuman act. The first step in making a defense is to explain why the defendant did what he did. Our law takes a firm stand that a jury should not nullify the law out of sympathy for the motives of the defendants. *See United States v. Dougherty*, 473 F.2d 1113 (D.C.Cir.1972). In a variety of cases, however, defense counsel will want to put matters to the jury that, strictly speaking, are irrelevant to the crime charged, but are essential to explaining the act done. In a variety of cases defense counsel have, therefore, put before the jury reasons and motives which could not, nor have been, a lawful defense. If a defendant is charged with first degree murder because he deliberately put to death another human being, it is not a defense in law that he did so to put a spouse or a child out of terrible suffering. Counsel, however, would not be performing as counsel if he or she did not proffer to the court the merciful motive that prompted the homicidal act.

Thus, for example, in two Florida cases counsel for the defense was permitted to examine the defendant and to bring out the defendant's merciful motive even though mercy killing is not legal in Florida. *Griffith v. Florida*, 548 So.2d 244 (1989) (defendant killed his three-year old daughter after her head became caught in the footrest of a living room chair); *Gilbert v. Florida*, 487 So.2d 1185 (Fla.App. 4th Dist.1986) (defendant killed his wife who was suffering from osteoporosis and Alzheimer's disease). Analogously, in California defense counsel brought out that the defendant had assisted an AIDS victim with suicide by strangulation because the defendant "was especially sensitive to the suffering associated with AIDS." *People v. Cleaves*, 280 Cal. Rptr. 146, 229 Cal.App.3d 367 (4th Dist. 1991).

As counsel for those accused of a crime, Zal had an obligation to them to present their defense and to present it not half-heartedly, not mechanically, but zealously. The duty of advocacy, the commands of our profession required no less. Zal, accordingly, had the right to bring out the reason for his clients' actions. Even if the reason for the actions did not constitute a good defense under the applicable law, an explanation allowed the jury to see his clients not as monsters mindlessly invading the rights of other, but as human beings.

The forbidden words used by Zal attempted to explain his clients' motivation and at the same time attempted to evoke the emotions that might be aroused if the jury were to perceive abortion as the killing of unborn children. But the clients of Zal were, as he concedes, not denied the opportunity to explain. Zal wanted to enlarge on their explanation. When Zal zealously enlarged upon this theme, he ran into the court's order.

At that juncture Zal's obligation to his clients had to yield to his obligation to the court. Fundamental as service to a client is, that service can never subvert a lawyer's obligation to the court. Without a court, the lawyer is nothing. With the court, the lawyer is a cooperating part of the system our society has adopted as the best way of assuring justice to everyone.

If the municipal court had refused to allow Zal's clients to explain themselves at all, we would confront a different case. In fact, the municipal court did allow each defendant one explanation of the action taken. Since the court struck that balance, it was not for Zal to seek a different balance of his own. Fidelity to law meant that he must obey. But that duty in California was, as will be shown below, *conditional*. The duty to obey existed only if the order was constitutional. I turn to a consideration of the order's constitutionality.

### The Constitutional Rights At Issue

*The Clients' Right To Trial By Jury.* As counsel for the defendants, Zal had the right to assert his clients' right to a trial by jury. Was this right violated by the *in limine* ban of certain words?

The use of the *in limine* order in criminal trials was infrequent until the 1960's. *See* Colbert, "The Motion in Limine in Politically Sensitive Cases: Silencing the Defendant at Trial", 39 *Stan.L.Rev.* 1271 at 1280 (1987). As the *in limine* motion became more popular with prosecutors, courts have found on occasion that exclusion of an entire defense was an invasion of the jury's province, *e.g., United States v. Contento-Pachon,* 723 F.2d 691, 693 (9th Cir.1984). But the *in limine* motion was accepted in trials where the defense of necessity was found irrelevant. In such cases, the defendants sought in vain to introduce a political issue into their trial. The courts did not allow them to turn the trial into a political demonstration. *United States v. Dorrell,* 758 F.2d 427, 430 (9th Cir.1985) (necessity defense for anti-missile demonstration excluded); *United States v. Seward,* 687 F.2d 1270, 1276 (10th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983) (necessity defense for antinuclear demonstration excluded).

A critic of these cases has argued that granting the prosecutor's *in limine* motion in politically sensitive cases "suppresses evidence concerning governmental policy that is essential to the cultivation of an informed citizen." Colbert, "The Motion In Limine" at 1326. The criticism is not without force, but of course other forums exist in which such information can be presented. The precedents now stand in such a way that a court of this circuit cannot conclude that a right to trial by jury is denied by the grant of such a motion.

*Zal's Own Right To Free Speech.* Could Zal exercise during trial a First Amendment right that was independent of his clients' First Amendment right to free speech? Judge Trott answers this question with a sweeping dictum, No. But we have already held that "attorneys and other trial participants do not lose their constitutional rights at the courthouse door." *Levine v. U.S. District Ct. for the C. Dist. of Cal.,* 764 F.2d 590, 595 (9th Cir.1985). It would be ironic if the Constitution failed to pro-

tect its professional defenders—the lawyers—in the very forum dedicated to the Constitution's doctrine. But when Zal used the forbidden words to ask the question of witnesses, he was unquestionably functioning on his clients' behalf. He was not exercising his own First Amendment right. His speech was used for his clients. It is fair to measure his rights by theirs.

*Zal's Clients' Right to Free Speech.* The principal Supreme Court precedent dealing with speech by an advocate during a criminal trial is *Sacher v. United States,* 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), a case where the conduct of counsel was obstructive to the point of being an attempt to bring the trial to a halt. The lawyers said and did whatever "could contribute to make impossible an orderly and speedy discharge of the case." *Id.* at 3–4, 72 S.Ct. at 452–53.

In contrast to this censurable speech and conduct, a pro se defendant referred to himself as a political prisoner and the presiding judge as a M—— F——. The Supreme Court reversed this litigant's conviction of contempt, saying, " 'The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil.' " *In re Little,* 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972), quoting *Craig v. Harney,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947). The test of imminent imperilling of the administration of justice was applied in *Eaton v. City of Tulsa,* 415 U.S. 697, 698, 94 S.Ct. 1228, 1229, 39 L.Ed.2d 693 (1974), which reversed the petitioner's contempt citation for calling his alleged assailant "a chicken shit" during cross-examination.

These holdings provide broad latitude for the use of language during a trial. They protect abusive and even obscene language in no way connected to the substance of a litigant's case. *A fortiori,* they indicate that the First Amendment protects vigorous speech closely connected with the case being litigated.

The majority, however, set as the standard for Zal's First Amendment rights in court the recent teaching of *Gentile v. State Bar of Nevada,* —— U.S. ——, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). In doing so, the majority necessarily relies on dicta, for *Gentile* concerned out-of-court statements by an attorney, not advocacy in a trial. Nonetheless, dicta of the Supreme Court have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold. We should not blandly shrug them off because they were not a holding. The Court's dicta the majority quotes are these:

> "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to "free speech" an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal. *Id.* 111 S.Ct. at 2743.

The Court then cited *Sacher* as precedent.

The dicta do not address a judicial system where it is perfectly lawful for an attorney to ignore an order of the court if the attorney believes it unconstitutional *and* can successfully show that it is. *Sacher* itself dealt with appropriate conduct for lawyers in a federal court. In that forum, "if the ruling is adverse, it is not counsel's right to resist it," *Sacher,* 343 U.S. at 9, 72 S.Ct. at 455. California has a different judicial system. Under California law, a contempt citation is void *if* it is based on an unconstitutional court order. *In re Berry,* 68 Cal.2d 137, 65 Cal.Rptr. 273, 280, 436 P.2d 273, 280 (1968) (an unconstitutional order "is issued in excess of jurisdiction and cannot sustain a contempt judgment based upon its violation"); *In re Misener,* 38 Cal.3d 543, 558, 213 Cal.Rptr. 569, 698 P.2d 637 (1985) ("an order of contempt cannot stand if the underlying order is invalid."); *In re Blaze,* 271 Cal.App.2d 210, 76 Cal.Rptr. 551 (1969). Under California procedure, if the attorney is willing to take the risk, he can ignore the void order and be vindicated. *See Glen v. Hongisto,* 438 F.Supp. 10 (N.D.Cal.1977). In such a system, the dicta of *Gentile* are not

a complete guide to the attorney's right to free speech.

Every governmental regulation of speech must be *"justified* without reference to the content of the regulated speech." *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984) (emphasis original). The justification for prohibiting outbursts in court by jurors, witnesses, or spectators is obvious: an outburst would disrupt the trial. The regulation of lawyers' speech presents a problem that requires much finer analysis when the intent of the lawyer speaking is to serve the client who is on trial. The decorum of the court and the expeditious conduct of the trial justify such restrictions on speech as prohibition of the lawyer insulting the court or delaying the trial or speaking without moderation or speaking irrelevantly. *See Sacher,* 343 U.S. at 9, 72 S.Ct. at 455. In the instant case, the municipal court viewed the business where the trespass occurred as irrelevant and reference to it as inflammatory. That business was not irrelevant to the defendants, but their explanation of their motives was permitted. Repeated reference to the business of the abortion clinic went beyond explanation in an effort to enlist the jury's sympathy in the defendants' cause. A different trial court might have judged differently. It was within the discretion of the court to prevent what it thought to be unnecessary recurrence to this theme.

Concluding that the municipal court did not violate the First Amendment rights of Zal's clients, I conclude only that it was within the power of the municipal court to limit the trial to trespass with an explanation of the motive for the trespass. The court did not have to permit repeated introduction of abortion into the trial. Repeated, the issue was irrelevant. The court's order was, therefore, constitutional.

Under California law Cyrus Zal did not act unprofessionally in resisting the order: he had serious reasons for challenging it as overbroad, and the court's holding of him of contempt because of the use of non-banned words went beyond its order. It was professionally responsible for him to use the channel provided by California Law to disobey and contest the constitutionality of what the municipal court had commanded. But, on balance, his challenge cannot be fully sustained and his petition for habeas corpus cannot be fully granted. I concur in the result as to the thirteen convictions where Zal violated the trial court's word-ban. I dissent as to the other convictions.