**Lisa HOUSEY, Plaintiff,**

v.

**CARINI LINCOLN–MERCURY,
Defendant.**

Civ. A. No. 92–C–604.

United States District Court,
E.D. Wisconsin.

April 1, 1993.

Monica M. Murphy, Podell, Ugent & Cross, S.C., Milwaukee, WI, for plaintiff.

Kevin J. Kinney, Krukowski & Costell, S.C., Milwaukee, WI, for defendant.

## ORDER

TERENCE T. EVANS, Chief Judge.

In this lawsuit, Lisa Housey alleges that her former employer, Carini Lincoln Mercury, discriminated against her because of her sex when she was employed as a service technician from May 28, 1990, to her termination on August 22, 1990. The complaint, filed June 9, 1992, asserts claims under title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Pursuant to the 1991 amendments, Ms. Housey has demanded a jury trial, compensatory damages, and punitive damages.

Carini has filed a motion for partial summary judgment on all claims under the 1991 amendments because the alleged discrimination occurred prior to the enactment of the act on November 21, 1991. According to Carini, the Seventh Circuit Court of Appeals, in *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.1992), and *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225 (7th Cir.1992), has definitively ruled that the Civil Rights Act of 1991 will only be applied prospectively to claims of discrimination arising after November 21, 1991.

The Civil Rights Act of 1991 has spawned a multitude of litigation on the question of retroactivity. Section 402(a) of the act states: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Pub.L. No. 102–166, § 402(a), 105 Stat. 1071 (1991). As pointed out by both the *Mozee* and *Luddington* courts, the fact that the act becomes effective on the date of enactment provides little guidance because a slew of interpretations are possible. The fact that the act contains two specifically prospective subsections but is silent on other sections adds to the confusion. As Judge Harlington Wood put it, section 402(a) is "hopelessly ambiguous," and, "although Sections 402(b) and 109(c) are explicitly prospective, the language is not sufficiently probative of congressional intent to suggest that Congress intended a retroactive application of the remainder of the Act." *Mozee*, 963 F.2d at 933.

Divining Congress's intent in writing section 402(a) from legislative history is also impossible, since it contains statements going both ways. Senator Kennedy, for instance, indicated his belief that the act would be retroactively applied to pending cases under judicial precedent, 137 Cong.Rec. S15,485 (daily ed. Oct. 30, 1991), while Senator Danforth indicated that the act would be prospectively applied under Supreme Court precedent, *id.* at S15,483. In Judge Posner's words, "the contenders could not agree, so they dumped the question into the judiciary's lap without guidance." *Luddington*, 966 F.2d at 227.

The "judiciary's lap" was perhaps not such a good place to dump the question. It is now about 16 months since former President Bush signed the Civil Rights Act of 1991, yet there is little consensus. All courts of appeals to consider the question, except the

Ninth, have decided that Congress did not intend to apply the 1991 act retroactively to reopen cases tried before the act was passed. The Seventh Circuit's decisions in *Mozee* and *Luddington* are its determination that cases on appeal will not be reopened to allow retroactive application of the 1991 act. Finally, the Supreme Court has also decided to consider that question. *Landgraf v. USI Film Products*, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993) (granting certiorari in a Fifth Circuit case).

Usually faced with motions to amend in cases that had not yet reached trial, district court judges have split about 50/50 on the question whether the 1991 act should apply to cases awaiting trial. *Compare Mojica v. Gannett Co.*, 779 F.Supp. 94 (N.D.Ill.1991); *Joyner v. Monier Roof Tile, Inc.*, 784 F.Supp. 872 (S.D.Fla.1992); *Langston v. Daniels, Micheals & Assoc.*, No. CV 91–P–2063–S, 1992 WL 198414 (N.D.Ala. June 4, 1992); *Robinson v. Davis Memorial Goodwill Industries*, 790 F.Supp. 325 (D.D.C. 1992) *and Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (N.D.Cal.1992) (all applying the amendments to pending cases) *with Steinle v. Boeing Co.*, 785 F.Supp. 1434 (D.Kan. 1992); *Tyree v. Riley*, 783 F.Supp. 877 (D.N.J.1992); *King v. Tandy Corp./Radio Shack*, 798 F.Supp. 701 (M.D.Ga.1992) *and Cook v. Foster Forbes Glass*, 783 F.Supp. 1217 (E.D.Mo.1992) (all refusing to apply the amendments to pending cases). The differing decisions have little geographic rhyme or reason. Even within this district the decisions have diverged. *Compare McKnight v. General Motors Corp.*, No. 87–C–248, 1992 WL 92770 (E.D.Wis. Apr. 22, 1992) (Gordon, J.) (1991 act applies to case through rule 60(b)(6) motion seeking relief from judgment); *Gillespie v. Norwest Corp.*, Nos. 85–C–1318 and 85–C–1393, 1992 WL 159125 (E.D.Wis. Feb. 14, 1992) (Stadtmueller, J.) (applies to pending case) *and* my decision in *Saltarikos v. Charter Mfg. Co., Inc.*, 782 F.Supp. 420 (E.D.Wis.1992) (applies to pending case) *with McKnight v. Merrill Lynch*, No. 90–C–597, 1992 WL 337506 (E.D.Wis. Jan. 9, 1992) (Curran, J.) (act not to be applied to case pending on date of enactment).

Although there are presently very few cases on this specific situation, the same divergence of views will likely occur with cases exactly like the present one, filed after the 1991 act was signed but regarding conduct occurring before November 21, 1991. *Compare Jaekel v. Equifax Marketing Decision Systems, Inc.*, 797 F.Supp. 486 (E.D.Va. 1992) (amendments apply to cases filed after Nov. 21, 1991, because no substantive rights affected and no manifest injustice results) *and Bland v. Burlington Northern R.R. Co.*, 811 F.Supp. 571 (D.Colo.1992) (amendments apply to cases filed after Nov. 21, 1991) *with Tyree*, 783 F.Supp. at 882 n. 3 (amendments not applicable to any conduct occurring before Nov. 21, 1992 even if case filed after enactment of act).

The conflicting decisions by district courts are generally due to each individual judge's selection of one of the conflicting Supreme Court precedents on statute retroactivity. Judge Wood goes through a lengthy discussion of the two lines of contrary precedent in *Mozee* that need not be repeated. In short, in *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1968), and *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court stated that the general rule requires courts faced with new statutory provisions to apply the law at the time of the decision unless otherwise stated by Congress or unless certain factors make retroactive application unjust. In other words, retroactivity is rebuttably presumed. In the *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), line of precedent, though, without overruling *Thorpe* or *Bradley*, the Court reversed the presumption. The Court stated that courts should assume that statutes apply only prospectively unless their language requires a retroactive effect. Since then, lower courts have bounded back and forth between these precedents. To make matters worse, the court of appeals for this circuit has been inconsistent in choosing its preferred presumption. *See Mozee*, 963 F.2d at 935 (comparing three cases from 1991 and 1992, two of which rely on *Bradley* and one that relies on *Bowen* ); *see also Luddington*, 966 F.2d at 227 ("We too have straddled this

divide[,]" citing cases). District courts have chosen for themselves which presumption to use, and because Congress's language in the 1991 act is ambiguous, the presumption selection usually determines how the issue is decided.

And all of this legal mumbo jumbo is regrettable. Parties to a case like this must only wonder just what in the world is going on here. One can only imagine Ms. Housey or a used car salesman at Carini Lincoln–Mercury reading what has been written here so far. They would certainly be scratching their heads wondering how the law can be so confusing. Now back to the decision.

In this motion for partial summary judgment, Carini argues that *Mozee* and *Luddington* apply to foreclose retroactive application of the 1991 act to any and all claims regarding conduct that occurred before November 21, 1991. Cases on appeal, having already been tried or otherwise resolved on the merits, are far different, however, from cases pending in the district courts on the date of the amendments and from cases that had not yet been filed as of that same date.

The Seventh Circuit has had pending before it a case much more similar to the present facts than either *Mozee* or *Luddington*. In *Mojica v. Gannett, Co.*, 779 F.Supp. 94 (N.D.Ill.1991), just a few days before trial, Judge William T. Hart allowed amendment of the complaint to add a jury demand, a claim for compensatory damages, and a claim for punitive damages. The jury found in Irene Mojica's favor. The case was heard on appeal by a panel consisting of Judge Walter J. Cummings, Judge Daniel A. Manion, and Senior District Judge Frank A. Kaufman (D.Md.), sitting by designation. Judge Manion dissented from the proposed panel opinion and asked that it be circulated to the full court under circuit rule 40(f). On March 4, 1993, in a *per curiam* opinion, *Mojica v. Gannett Co., Inc.*, 986 F.2d 1158 (7th Cir. 1993), the court announced its decision to hear the matter *en banc* to determine whether the panel's proposed disposition conflicted with the holdings of *Mozee* and *Luddington*. Judges Cummings and Richard Cudahy dissented from the decision to rehear *en banc*.

In a lengthy dissent from the *per curiam* decision, Judge Cummings points out that *Mozee* and *Luddington* deal with a completely different situation than that in *Mojica*. In *Mozee*, although this is rather difficult to comprehend, the civil rights suit was filed way back in 1977. The case had been the subject of several district and appellate court opinions. After an interlocutory appeal decision in August 1991, affirming in part and reversing in part, both parties filed petitions for rehearing. While the petitions for rehearing were pending, Congress passed the 1991 Act. *See Mozee*, 963 F.2d at 931. In *Luddington*, the district court determined the case on summary judgment in the defendant's favor. While the appeal was awaiting argument, the 1991 act was enacted. In *Mojica*, however, although the case had been filed prior to the 1991 amendments, no trial or final determination on the merits had been made by the district court as of November 21, 1991. The difference in status of the cases is important. *Mozee*, in fact, admits as much. Judge Wood treated the retroactivity question on appeal separately from the issue of applying the 1991 amendments on remand.

According to Judge Cummings, the following question remains open: "To my knowledge ... no circuit has examined the separate question, presented here, of whether Congress intended the 1991 Act to apply to cases tried after its enactment." *Mojica*, 986 F.2d at 1159 (Cummings, J., dissenting). While determining that the 1991 act did not apply to a case pending on appeal during its enactment, the *Mozee* court refrained from determining the procedure for a case not yet tried. *Mozee* was an interlocutory appeal, which remanded some issues while affirming others. The remand did not initiate an entirely new proceeding and Judge Wood declared that the 1991 amendments would not apply to the case on remand since it would result in the remanded claims being governed by different law than the claims that had been affirmed.

Time to come up for air. If Ms. Housey and the Carini salesmen are still reading this, congratulations to them. My guess, however, is that they fell asleep long ago.

766

Now back to the decision, and a visit with Judge Posner.

In sweeping language, Judge Posner in *Luddington* attempted to go beyond the issues in his case to decide the present question, but then tacked on a retreat: "We hold that the new act is applicable only to conduct engaged in after the effective dates (plural because several sections carry different effective dates) in the act, at least if the suit had been brought before the effective date." *Luddington*, 966 F.2d at 229–230. Although Judge Posner's broad language encompasses Ms. Mojica's case, because her lawsuit had been brought before November 21, 1991, and then amended, the attempted application to Ms. Mojica's case may be mere dicta. According to Judge Cummings, *Luddington* incorrectly "conflated two different types of retroactivity ...: because the Act did not apply retroactively to trials occurring before the Act was passed, we reasoned that the Act might not apply retroactively to conduct ... occurring before the Act was passed." *Mojica*, 986 F.2d at 1162 (Cummings, J., dissenting). In essence, by assuming that the 1991 act had to be purely retroactive or purely prospective in regard to any case not fully through the whole court system, Judge Posner ignored the difference between a case on appeal and a case not yet tried.[1]

Even Judge Posner, though, exempts Ms. Housey's type of lawsuit from his broad holding. So, even if Ms. Mojica's case must follow *Luddington*, this case does not—Carini's arguments to the contrary. *Mozee* and *Luddington* are just not dispositive of the issue presently before me.

In the event I did not deem *Mozee* and *Luddington* conclusive, Carini argued in its briefs that traditional principles of statutory construction nevertheless require prospective application of the 1991 act in the present case. Not surprisingly, Carini argues that the *Bowen* line of precedent presuming prospective application applies, while Ms. Housey argues that the *Bradley* line favoring retroactivity applies.

Judge Cummings, however, offers a well-reasoned approach that makes the presumption immaterial. Regardless of the line of precedent applied and regardless of ambiguity on the effective dates for other situations such as cases on appeal, "the 1991 Act shows beyond doubt that Congress intended it to apply to *new trials* brought after the passage of the Act." *Mojica*, 986 F.2d at 1159 (Cummings, J., dissenting) (emphasis added). I hereby adopt for cases like Ms. Housey's (filed after November 21, 1991, but regarding conduct occurring prior to that date) Judge Cummings's reasoning:

> The Act shows by its own terms that Congress intended to regulate discrimination trials occurring after the Act was passed. For example, Section 3 provides: "The purposes of this Act are * * * [to] provide statutory guidelines for the adjudication of disparate impact suits under title VII of the Civil Rights Act of 1964 * * *." Section 3 identifies the statute as one that creates guidelines for "adjudication." It

---

1. Judge Posner did parse retroactivity into five different categories, stating that the statute could possibly be applied
   (1) to cases filed and completed before the effective date of the statute that arise from acts committed before that effective date, (2) to cases filed before the effective date of the statute, but not completed by that date, that arise from acts committed before that date, (3) to cases filed after the effective date that arise from acts committed before that date, (4) to cases in any of these categories but in which the conduct complained of straddles the effective date of the statute, or (5) only to cases filed after the effective date that arise from acts committed entirely after that date. The first four types of application would be retroactive to varying degrees; the fifth wouldn't be retroactive at all.

*Luddington*, 966 F.2d at 227. Judge Posner labeled both *Luddington* and *Mozee* as group (2) cases. (Ms. Housey's is clearly a group (3) case.) Judge Posner's list is not detailed enough, though. For instance, in Judge Wood's list of possible interpretations of section 402(a) are groups (3) and (5) above, but group (2) is broken down: the clause "might mean that the Act applies to all proceedings beginning after the enactment, it might mean that the Act's provisions apply to all pending cases at any stage of the proceedings, or it might mean that the Act's procedural provisions apply to proceedings begun after enactment and the substantive provisions apply to conduct that occurs after the enactment." *Mozee*, 963 F.2d at 932.

leaves no room to wonder when courts should begin to use these guidelines. No matter that the Act's new guidelines may alter substantive outcomes: "where [ ] congressional intent is clear, it governs." *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837, [110 S.Ct. 1570, 1577, 108 L.Ed.2d 842] *Gay v. Sullivan,* 966 F.2d 1124 (7th Cir.1992). Since Congress intended the Act to apply to new trials, judicial presumptions for or against retroactivity are irrelevant when, as here, trial occurs after passage of the Act. By creating a new regime for the adjudication of discrimination cases, Congress expressed its intent to hold parties responsible under judgments concerning conduct that occurred before the passage of the Act.

Previous discussions of this issue seem to assume that the Act must be either purely retroactive or purely prospective. If the Act is purely retroactive, then courts must overturn old verdicts and order new trials under the new standards offered by the Act. If the Act is purely prospective, then courts may only apply it to conduct that occurs after the Act was passed. Neither approach is faithful to Congressional intent. Congress can distinguish between differing degrees of retroactivity, and it has done so in the Act. It has not ordered courts to reopen settled disputes, but it has ordered courts to apply the Act's provisions to new trials regardless of when the conduct at issue occurred. Thus the Act is both prospective, in the sense that it applies to new trials, and retroactive, in the sense that it ignores when the wrongful conduct occurred. The Act creates few new rules against discrimination, focusing instead on outlining new procedures and remedies to use in new trials. This should persuade the honest student of Congressional intent that the Act is not addressed to employer's conduct, but rather to the conduct of federal judges administering trials under previously enacted civil rights laws.

Section 102 sets out a new framework for adjudicating claims of intentional discrimination brought under Title VII. [FN5] Paragraph (d)(a)(A) defines a "complaining party" as "a person who may bring an action or proceeding under title VII," identifying future claims without qualification. [FN6] Paragraph (a)(1) provides compensatory and punitive damages "[i]n an action brought by a complaining party under [42 U.S.C. sec. 2000e–5] against a respondent who engaged in unlawful intentional discrimination." Paragraph (b)(2) explains that punitive damages will be available only where "the respondent engaged in a discriminatory practice with malice * * *." Paragraph (c) allows either party to demand a jury without distinguishing as to the timing of underlying claims. Section 102 thus modifies the procedural and remedial regime courts must use in Title VII trials. The use of the simple past and future tenses, unqualified by other language, directs courts to apply the new procedures and remedies to prior conduct that was illegal before the Act and remains illegal now. Section 102 has prospective effect without regard to when the wrongful conduct occurred.

Sections 104 and 105 of the Act also address the adjudication of Title VII claims. Section 104 again defines a complaining party as "a person who may bring an action under [Title VII]," addressing the section to all future claimants without qualification. Section 105 is entitled "Burden of Proof in Disparate Impact Cases," and details at length shifting burdens of demonstration and available employer defenses—without reference to the timing of underlying events. Section 107 provides that a "complaining party" (a future claimant) establishes an "unlawful employment practice" when he or she "demonstrates that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." This Section establishes simple but-for causation as the element to prove in future Title VII cases, without regard to when discriminatory conduct occurred. Since the conduct was and remains illegal, and since the Act merely updates the administration of old causes of action, the Act would have to

qualify this simple language if it wished to exempt employers charged with discrimination after its effective date for conduct occurring before the effective date. In other words, the critical event for purposes of applying the Act's Sections on trial procedures is not the allegedly wrongful conduct, but the date of the trial itself.

*Mojica,* 986 F.2d at 1162–63 (Cummings, J., dissenting) (footnotes omitted). At least three other district courts have published opinions in which they decided that regardless of the application of the 1991 act to cases pending at the time of the enactment, cases filed *after* enactment can be brought under the 1991 act's provisions. *See Jaekel,* 797 F.Supp. 486; *Bland,* 811 F.Supp. 571, (oftentimes quoting, strangely, both *Mozee* and *Luddington* ); and *Great American Tool & Mfg. Co. v. Adolph Coors Co., Inc.,* 780 F.Supp. 1354, 1355 (D.Colo.1992) (Judge Lewis T. Babcock, who in *Hansel v. Public Service Co.,* 778 F.Supp. 1126 (D.Colo.1991), had determined that the 1991 act could not be applied to cases pending at the time of enactment, distinguished his own case: "Because this case was not pending at the time the Act became law, there is no issue of retroactive application.... The Act took effect on November 21, 1991 and, thus, it governs all actions filed after that date.")

Furthermore, for the reasons explained by Judge Cummings, it is not unfair to apply procedural and remedial provisions—such as alternate damage provisions—of the act to Carini's pre-act conduct. *See* 986 F.2d at 1166–68. The conduct deemed illegal by title VII and, if Ms. Housey's allegations are true, committed by Carini, was just as illegal before November 21, 1991, as it is now. Carini also cannot argue that it is unjust to defend a civil lawsuit before a jury instead of a judge. *See id.*

Because this case is not controlled by either *Mozee* or *Luddington,* and for the reasons described at length by Judge Cummings, Ms. Housey's claims under the Civil Rights Act of 1991, which were filed post-enactment but involve pre-enactment con-

duct, should not be dismissed. Moreover, due to the pending *Mojica* case, the better path is to allow the claims under the 1991 amendments to proceed for the present.[2] Should the Seventh Circuit's eventual opinion in *Mojica* mandate a different result in this case, Carini may submit a new motion at that time.

A conference call to discuss further proceedings is scheduled for 9 a.m. on April 6, 1993.

SO ORDERED.

---

**2.** My original thought was to hold a decision on this motion until *Mojica* had been decided. The March 4, 1993, order granting rehearing *en banc* has delayed that decision indefinitely, however. As of today, new oral arguments have not yet been scheduled.