*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0264p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARC D. MEZIBOV,

        *Plaintiff-Appellant,*

    *v.*

MICHAEL K. ALLEN, HAMILTON COUNTY OHIO,
        *Defendants-Appellees.*

No. 03-3973

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00559—Sandra S. Beckwith, Chief District Judge.

Argued: August 12, 2004

Decided and Filed: June 16, 2005

Before: SILER, BATCHELDER, and MOORE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Michael J. O'Hara, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellant. Lawrence Edward Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Michael J. O'Hara, Suzanne Cassidy, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellant. Lawrence Edward Barbiere, Michael E. Maundrell, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellees.

    BATCHELDER, J., delivered the opinion of the court, in which SILER, J., joined. MOORE, J. (pp. 9-11), delivered a separate opinion concurring in part and dissenting in part.

---

### OPINION

---

    ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant Marc D. Mezibov ("Mezibov") appeals the district court's dismissal, pursuant to FED. R. CIV. P. 12(b)(6), of his 42 U.S.C. § 1983 claim of retaliation against Hamilton County Prosecutor Michael K. Allen ("Allen"). Mezibov, a criminal defense attorney, claims that Allen uttered defamatory comments about Mezibov in retaliation for Mezibov's pursuing his First Amendment right to "fil[e] motions and rais[e] legitimate defenses" on behalf of his clients in the courtroom. Because the activity that Mezibov claims subjected him to retaliation is not a constitutionally protected activity, and because, even if it were, a criminal defense attorney of ordinary firmness would not have been chilled from

1

engaging in that activity as a consequence of Allen's adverse action, we affirm the district court's dismissal of Mezibov's § 1983 claim.

## BACKGROUND

Mezibov is an attorney licensed to practice in the state of Ohio. He served as defense counsel for Dr. Jonathan Tobias during Tobias's criminal trial in Hamilton County, Ohio, on 26 counts of abuse of a corpse. Allen was the Hamilton County Prosecutor during Dr. Tobias's prosecution. In the course of representing Dr. Tobias, Mezibov filed three motions seeking to dismiss the indictment and disqualify Allen on the basis that he had engaged in improper conduct. The trial court denied the motions, and on October 1, 2001, a jury convicted Dr. Tobias of two of the 26 counts of abuse of a corpse.

Mezibov alleges that immediately following the jury verdict, Allen released a statement to the local media which said the following:

> Obviously, this [Mr. Mezibov] is a man who doesn't try too many cases and the verdict shows that. If I were Dr. Tobias, I would ask for my money back . . . . Real criminal defense attorneys, lawyers who try cases every day, don't do that. They don't throw mud . . . . Obviously it backfired in their face.

Mezibov further alleges that later that month, on October 21, 2001, Allen appeared on a local television show known as "Hot Seat" and made the following comments:

> [Mr. Mezibov] wanted to make it a show trial where he could attack me, he could attack Dr. Parrott, but frankly it blew up in his face and now his client, because of [Mezibov's] conduct, faces two years in prison and the loss of his medical license. You know, in consumer law we have a saying let the buyer beware. I think in law, you ought to have a saying, let the client beware . . . . Had Dr. Tobias approached us early on about cooperating with the prosecution and working for us in a conviction of Mr. Condon, that's something that in all likelihood we would have entertained. But, his lawyer, Marc Mezibov, chose not to do that. And it makes you wonder, here's a man that now is going to lose his medical license, faces two years in jail, who may very well have been able to work with us and escape prosecution. It makes you wonder about the tactics of defense counsel and their intentions quite frankly . . . . And when my ethics are questioned and when I'm called unethical, you're gonna get it back and you're gonna get it back with both barrels because I have to. I can't permit that to happen. Real defense lawyers, the Scott Croswells of the world, the Merle Shiverdeckers, they try cases on the facts of the case. They try cases from the testimony that comes from the witness stand and the law that is given from the judge. I think Mr. Mezibov, what he wanted to do, he wanted his show trial. He wanted to be able to attack me, he wanted to be able to attack Dr. Parrott, and he wanted to be able to attack the Republican party . . . . I have to say had this matter been handled in the normal fashion by a defense lawyer who was interested in his client's best interest rather than having a political show trial, Dr. Tobias very well could have fared a lot better than he did.

In July 2002, Mezibov filed this 42 U.S.C. § 1983 action, alleging that Allen made defamatory comments under color of state law, in an effort to "retaliate against Mezibov for filing motions and raising legitimate defenses in his capacity as defense counsel in the criminal proceedings initiated and prosecuted by Defendant Allen . . . against Dr. Tobias." In other words, Mezibov claims he was being retaliated against for "exercising his First Amendment right to protect his client's Sixth Amendment and other constitutional rights." Mezibov further alleges that as a

result of Allen's comments he "has suffered damage to his professional reputation and emotional anguish and distress entitling him to compensation."

The district court dismissed Mezibov's complaint pursuant to FED. R. CIV. P. 12(b)(6), holding that in filing motions and vigorously defending his client in court, Mezibov was not engaged in a constitutionally protected activity. The district court noted that although Mezibov claims his activities are protected under the First Amendment, they are simply discrete functions of the practice of law, which is not a privilege or immunity protected by the Constitution. Since Mezibov failed to allege that he was engaged in a constitutionally protected activity, the court reasoned that he did not properly state a claim for relief under 42 U.S.C. § 1983, and granted Allen's motion to dismiss. This appeal followed.

## ANALYSIS

### I.        Standard of Review

We review de novo the grant or denial of a motion to dismiss under FED. R. CIV. P. 12(b)(6). *Barrett v. Harrington*, 130 F.3d 246, 251 (6th Cir. 1997). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Nonetheless, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Jackson v. Heh*, 215 F.3d 1326 (Table), 2000 WL 761807 at *2 (6th Cir. 2000) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

### II.       Retaliation Under 42 U.S.C. § 1983

To survive a motion to dismiss a claim under 42 U.S.C. § 1983, the plaintiff must properly allege two elements: (1) the defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). As to the first element, by alleging that Allen, in his role as prosecutor, made defamatory statements to the media concerning a trial that his office prosecuted, Mezibov has sufficiently alleged that Allen was acting under color of state law for purposes of 42 U.S.C. § 1983. *See id.* at 677-78 (holding that a county sheriff acted under color of state law when he issued press releases concerning matters of official business in which he was involved).

With regard to the second element of a § 1983 claim, when the alleged violation of federal law is that a government official retaliated against a plaintiff for exercising his constitutional rights, as in this case, the plaintiff must ultimately prove three sub-elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The district court dismissed Mezibov's claim under the first of these sub-elements by determining that his filing motions and defending his client in court were not activities protected under the First Amendment. We agree.

#### A.        Protected Interest

Whether an attorney can claim First Amendment protection on his own behalf for his filing motions and making courtroom statements on behalf of his client is a question of first impression in this circuit. While the Supreme Court has not squarely addressed this question, it has noted, in dicta, that "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile v. State Bar of Nevada*,

501 U.S. 1030, 1071 (1991).  Furthermore, it appears that no circuit court has ever actually granted an attorney relief under the First Amendment for this narrow category of speech.

It is not surprising that courts have thus far been reluctant to allow the First Amendment to intrude into the courtroom.  At first blush, the courtroom seems like the quintessential arena for public debate, but upon closer analysis, it is clear this is not, and never has been, an arena for *free* debate.  *Zal v. Steppe*, 968 F.2d 924, 932 (9th Cir. 1992) (Trott, J., concurring); *see Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) (characterizing the courtroom as a nonpublic forum for purposes of First Amendment analysis).  An attorney's speech in court and in motion papers has always been tightly cabined by various procedural and evidentiary rules, along with the heavy hand of judicial discretion.  In fact, judges regularly fine attorneys, and even throw them in jail from time to time, as a direct consequence of attorneys' in-court speech, and it appears no circuit court has ever found this to violate the First Amendment.[1]  When an attorney believes that the trial court improperly applied the law or relevant rules in preventing him from presenting information to the judge or jury, his sole remedy traditionally has been to appeal the judge's application of the particular rule of exclusion, rather than to claim First Amendment protection.  *See Gentile*, 501 U.S. at 1071.  Moreover, any such challenge is almost always grounded in the rights of the client, rather than any independent rights of the attorney.  *See Zal*, 968 F.2d at 931 (Trott, J., concurring) ("In the courtroom, during a judicial proceeding, an attorney's 'First Amendment' rights depend exclusively on his client's trial rights."); *see also Legal Services Corporation v. Velazquez*, 531 U.S. 533 (2001) (upholding First Amendment challenge by indigent clients to government funding regime that prevented their attorneys from presenting to a court on the clients' behalf certain otherwise-reasonable arguments against the validity of welfare laws).

Mezibov reminds us that "attorneys and other trial participants do not lose their constitutional rights at the courthouse door."[2] *Levine v. United States Dist. Court for the Cent. Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985).  This grandiose statement is of little help, however, when it comes to analysis under the First Amendment, where rights have always depended largely upon the nature of the forum.  The courtroom is a nonpublic forum, *Berner*, 129 F.3d at 26, where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir.  In fact, the courtroom is unique even among nonpublic fora because within its confines we regularly countenance the application of even viewpoint-discriminatory restrictions on speech.  *See, e.g.*, *Zal*, 968 F.2d 924 (upholding against First Amendment challenge attorney's contempt citations for attempting to present excluded defenses to the jury and for using words forbidden by the judge, such as "abortion," "fetus," and "rights of the unborn"), *cert. denied*, 506 U.S. 1021 (1992); FED. R. EVID. 404(b) (banning attorney from arguing that "other crimes, wrongs, or acts" are relevant to determining a person's action in the instant case); FED. R. CIV. P. 11 (granting district court the authority to sanction attorney for advancing a point of view it deems to be frivolous); FED. R. APP. P. 34, 38 (granting appellate court the authority to deny oral argument, and even award damages to appellee, if it deems appellant's point of view to be frivolous).  *Compare* FED. R. EVID. 412(a) (banning attorney from arguing in a sexual misconduct case that an alleged victim's other sexual behavior is relevant to the issue of consent in the instant case) *with* FED. R. EVID. 413(a) (expressly allowing attorney to argue in a sexual misconduct criminal case that defendant's prior commission of sexual assault is relevant to whether he behaved similarly in the instant case).

---

[1] It is clear, however, that attorneys retain some level of due process protection in connection with these punishments.  *See Pounders v. Watson*, 521 U.S. 982, 991 (1997) (noting that "the Due Process Clause no doubt imposes limits on the authority to issue a summary contempt order").

[2] We note that, despite the apparent implications of this statement for attorney speech in the courtroom, *Levine* actually dealt with an attorney's out-of-court communications with the media, a realm where the attorney clearly has some First Amendment rights.  *See Gentile*, 501 U.S. at 1051, 1073-76.

Furthermore, in its equating attorneys with other trial participants, the quoted proclamation from *Levine* highlights an important flaw in Mezibov's argument. We cannot believe (and have come across no authority to suggest) that other trial participants, with the possible exception of an actual party to the case,[3] possess any First Amendment right to speak up or otherwise present a point of view in the courtroom. We can conceive of no such right for jurors, court reporters, bailiffs, or spectators to interrupt a judicial proceeding with their questions or musings. Therefore, in finding no First Amendment rights on the part of the attorney participating in a judicial proceeding, we are simply re-affirming the commonsense principle that attorneys do not possess "any right in the first amendment that is not the common legacy of every citizen." *Ukrainian-American Bar Assoc., Inc. v. Baker*, 893 F.2d 1374, 1381 (D.C. Cir. 1990). In fact, the Supreme Court has gone even further, declaring that there are times when an attorney's First Amendment rights are less than those of the common citizen. *See Gentile*, 501 U.S. at 1071-74.

Moreover, an attorney's job in the courtroom, although it necessarily includes speech, is fundamentally inconsistent with the basic concept of "free" speech. As an initial matter, that the attorney has any permission to speak in a judicial proceeding is entirely dependent upon his representation of a client; absent that client, the attorney is completely silenced. But even once the attorney has his client, his advocacy in the courtroom and in filings cannot honestly be characterized as "free" speech. As noted above, myriad procedural and evidentiary rules, along with a liberal allowance for judicial discretion, operate to severely limit what an attorney can say in the courtroom. But more fundamentally, by choosing to represent a client in court, the attorney assumes a role that is in absolute conflict with his exercising free speech. For example, the attorney is bound by this voluntary relationship to make arguments only to the benefit of his client, regardless of what the attorney himself might like to say. *See* OHIO CODE OF PROF'L RESPONSIBILITY EC 7-9 (2005)[4] (requiring attorney to "always act in a manner consistent with the best interests of his client"); OHIO CODE OF PROF'L RESPONSIBILITY EC 7-24 (2005) (declaring that "[t]he expression by a lawyer of his personal opinion . . . is not a proper subject for argument to the trier of fact"). In addition, an attorney is ethically bound to make reasonable arguments on behalf of his client, even if the attorney disagrees with them. *See* OHIO CODE OF PROF'L RESPONSIBILITY EC 7-4 (2005) (allowing attorney to "urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail"); OHIO CODE OF PROF'L RESPONSIBILITY DR 7-101 (2005) (requiring attorney to, within the bounds of his professional judgment, "seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules"). Therefore, because an attorney, by the very nature of his job, voluntarily agrees to relinquish his rights to free expression in the judicial proceeding, we see no basis for concluding that his free speech rights are violated by a restriction on that expression.[5]

Mezibov cites *Legal Services Corporation v. Velazquez*, 531 U.S. 533 (2001), for the proposition that an attorney has a First Amendment right to advocate on behalf of his client in court. The Supreme Court in *Velazquez* upheld a First Amendment challenge by indigent clients to a congressional statute allocating federal funds to local organizations for the purpose of providing legal representation to poor people in non-criminal proceedings, but with a condition prohibiting "legal representation . . . involv[ing] an effort to amend or otherwise challenge existing welfare

---

[3] As discussed below, the Supreme Court's opinion in *Legal Services Corporation v. Velazquez*, 531 U.S. 533 (2001), arguably grants some limited First Amendment rights to parties to present legal arguments to a court.

[4] The Ohio Code of Professional Responsibility governs the conduct of Ohio attorneys, such as Mezibov.

[5] We note that throughout his complaint Mezibov emphasizes that his ethical obligations as an attorney required him to file the motions at issue in this case, apparently thinking this helps his argument that his activity is protected as "free" speech.

law." *Id.* at 536-37. The Court interpreted this condition as "prevent[ing] an attorney from arguing to a court" that a state statute conflicts with a federal statute or that either a state or federal statute violates the Constitution. *Id.* at 537. The Court characterized the congressional funding scheme as a limited public forum, and thus found its viewpoint-discriminatory condition constitutionally impermissible.

Although it is Mezibov's most helpful authority for his view that an attorney has a First Amendment right to advocate in court, *Velazquez* is actually quite different from the case at bar. First, *Velasquez* was a challenge by the Legal Services Corporation and its indigent clients seeking to vindicate the clients' own First Amendment interests in having their otherwise-reasonable arguments heard in court; nowhere does *Velazquez* recognize a First Amendment right personal to the attorney independent of his client, as Mezibov seeks here. Second, *Velazquez* involved a regulation akin to a prior restraint (i.e., the clients' otherwise-reasonable arguments were entirely excluded from the courtroom before the clients had a chance even to advance them), among the most noxious of affronts to the First Amendment. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) ("Any system of prior restraint . . . comes to this Court bearing a heavy presumption against its constitutional validity."); *see also Velazquez*, 531 U.S. at 544-45, 547-48. Mezibov, however, presented his arguments fully before being subjected to the alleged retaliation. Third, the regulation at issue in *Velazquez* forbade both in-court argument by the attorney and out-of-court consultation between attorney and client[6] regarding the restricted issues, *Velazquez*, 531 U.S. at 544; the alleged retaliation in the instant case relates only to the narrower category of attorney speech in the context of a judicial proceeding. Fourth, *Velazquez* involved the complicating twist of a government funding program that the Court deemed a limited public forum for First Amendment purposes, *id.* at 543-44; the instant case involves only speech in the courtroom, which as a nonpublic forum is less conducive to free speech rights. *See Berner*, 129 F.3d at 26. For these reasons it cannot be said that *Velazquez* recognizes an attorney's First Amendment rights independent of his client's in the context of a judicial proceeding.[7]

We think the district court was correct in its basic conclusion: in filing motions and advocating for his client in court, Mezibov was not engaged in free expression; he was simply doing his job. In that narrow capacity, he voluntarily accepted almost unconditional restraints on his personal speech rights, since his sole raison d'etre was to vindicate his client's rights. For these reasons, we hold that in the context of the courtroom proceedings, an attorney retains no personal First Amendment rights when representing his client in those proceedings. Therefore, Mezibov has failed to allege that he was engaged in constitutionally protected conduct as the precipitating factor for his alleged retaliation, and his claim under 42 U.S.C. § 1983 was properly dismissed.

## B.      Adverse Action

Even if we were not convinced that Mezibov's advocacy is not protected under the First Amendment, we would affirm the dismissal of his claim due to his failure to allege that he suffered an adverse action that "would deter a person of ordinary firmness from continuing to engage in [the constitutionally protected] conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). As an initial matter, pursuant to this court's en banc decision in *Thaddeus-X*, we are required to "tailor[]" our analysis under the "adverse action" prong to the circumstances of this specific

---

[6] As mentioned in *supra* note 2, attorneys clearly retain some First Amendment rights outside of the courtroom, even for speech that touches upon their representing clients.

[7] It should also be noted that a broad reading of *Velazquez* would call into question the rules of several circuits that forbid citation to unpublished legal opinions, which effect a prior restraint on both the attorney and the client seeking to present an otherwise-relevant argument to the court. *See, e.g.*, 2D CIR. R. 0.23; 7TH CIR. R. 53(b)(2)(iv); 9TH CIR. R. 36-3; FED. CIR. R. 47.6(b).

retaliation claim. *Id.* at 398 (requiring specific tailoring and noting that "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse"). Thus, the appropriate formulation of the "adverse action" prong in Mezibov's case is whether the alleged defamation would deter a criminal defense attorney of ordinary firmness from continuing to file motions and vigorously defend his client. *See Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir. 1999) (formulating test under "adverse action" prong for elected city council member as whether a "public official of ordinary firmness" would be deterred from exercising her First Amendment rights).

We recognize that in a retaliation case, "since there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] need not be great in order to be actionable." *Thaddeus-X*, 175 F.3d at 397 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Nevertheless, since § 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we "trivialize the First Amendment" by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred. *Id.* (quoting *Bart*, 677 F.2d at 625).

In *Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999), we addressed First Amendment retaliation claims on behalf of an elected city council member and a former firefighter who initiated an investigation of the fire department. The city council member, Mattox, claimed that defendants, in retaliation for her speech on matters of public concern, released embarrassing information about her that contributed to her losing the next election. We noted that as an elected public official, Mattox voluntarily opened herself to criticism of her actions and political stances, but that discrediting her in retaliation for her exercise of First Amendment rights was "inappropriate and unfortunate." *Id.* at 522. Nonetheless, we emphasized that she was merely criticized–not fired–for her views, and that "[p]ublic officials may need to have thicker skin than the ordinary citizen," and thus found that Mattox's alleged injury did not meet the "adverse action" requirement for retaliation. *Id.*

The firefighter, Holly, alleged that defendants released information regarding a traumatic childhood incident and her personal relationships with members of the fire department in retaliation for her First Amendment activities. We noted that since Holly's embarrassing personal statements were irrelevant to the investigation, making them public in retaliation for her First Amendment activities would be "improper." *Id.* at 523. Nevertheless, we held that despite any such retaliatory intent, Holly's allegations did not satisfy the "adverse action" prong. In so doing we emphasized that Holly was merely claiming a generalized harm to her character and reputation, that "[n]owhere does she attempt to concretize her personal injury," and that "[w]ithout anything more specific," Holly's allegations do not meet the constitutional threshold for First Amendment retaliation. *Id.*

For purposes of "adverse action" analysis, Mezibov is a hybrid of the two plaintiffs in *Mattox*. Like Mattox, Mezibov, as an attorney taking on a high profile case, "voluntarily placed [himself] open to criticism of [his] actions." *See id.* at 522. As such, Mezibov must have a "thicker skin than the ordinary citizen"[8] when it comes to enduring criticism for his behavior, even if it is protected speech under the First Amendment. *See id.* And like Holly, Mezibov has failed to allege a "specific" or "concret[e]" personal injury. *See id.* at 523. He merely claims "damage to his

---

[8]We do not address the issue of whether Mezibov is a "public figure" for First Amendment purposes. *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 345 (1974) (requiring, in accordance with the First Amendment, a standard of knowing falsity or reckless disregard in order for defamation recovery by public figures, including those who have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved"). We only note the inherently public nature of Mezibov's position for purposes of properly tailoring the "adverse action" analysis under *Thaddeus-X*. *See Thaddeus-X*, 175 F.3d at 398.

professional reputation and emotional anguish and distress," the very same kind of harms we found insufficient in *Mattox*. *See id.*

Furthermore, in analyzing the extent of the "adverse action" alleged by Mezibov, we must be careful to take into account only those comments made by Allen that could reasonably be construed as defamatory, lest we trample on the First Amendment rights that Allen retains as a government official. *See McBride v. Village of Michiana*, 100 F.3d 457, 462 (6th Cir. 1996) (cautioning in a § 1983 retaliation case that "[t]he proper exercise by [government officials] of their own free speech rights cannot serve as the basis for imposition of liability upon those individuals"). In the instant case, Mezibov filed public motions with the court accusing Allen of unethical conduct. It would be inconsistent with core First Amendment principles and basic notions of fairness not to allow Allen to respond to these allegations to the extent his out-of-court comments were not defamatory, even if that response was (quite naturally) prompted by constitutionally protected speech by Mezibov.

With all that in mind, we are not persuaded that a criminal defense attorney of ordinary firmness would be deterred from vigorously defending his clients as a consequence of the alleged defamation in this case. First, as an attorney in a highly publicized case, Mezibov must be expected to endure some scrutiny for his actions. Second, any harm to Mezibov as a result of Allen's speech is too minimal to be constitutionally cognizable. Mezibov alleges no specific harm–only a generalized harm to his character and reputation. *See Mattox*, 183 F.3d at 521-22 (noting that while in some cases "embarrassment, humiliation, and emotional distress" are actionable under § 1983, such harm is not equivalent to being fired or suspended from one's job). Furthermore, the substance of Allen's out-of-court comments was basically that Mezibov is a bad attorney, that he is inexperienced, and that he was putting his own interests before those of his client. To the extent these comments are not constitutionally protected in their own right, we do not think they exact a harm upon Mezibov that would deter an ordinary criminal defense attorney from vigorously representing his clients. If anything, we think the opposite: that such comments would spur the typical attorney to go out of his way to prove them wrong. In fact, that appears to be just what happened in Mezibov's case. After Allen made his comments, Mezibov was successful in getting his client's conviction reversed on appeal. *See State v. Tobias*, No. C-020261, 2003 WL 21034555 (Ohio Ct. App. May 9, 2003). Therefore, Mezibov has not alleged sufficient facts to satisfy the "adverse action" prong for a retaliation claim.

## CONCLUSION

In filing motions and vigorously defending his client in a judicial proceeding, Mezibov was not engaged in speech protected by the First Amendment; thus, he has failed to allege the protected interest necessary to succeed on his retaliation claim. Furthermore, the defamation Mezibov alleges does not constitute an adverse action sufficient to deter a criminal defense attorney of ordinary will from vigorously defending his client. Therefore, we **AFFIRM** the district court's dismissal of Mezibov's claim under 42 U.S.C. § 1983.

---

### CONCURRING IN PART, DISSENTING IN PART

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. Because I emphatically disagree with the majority's alternative holding that, "in the context of the courtroom proceedings, an attorney retains no personal First Amendment rights when representing his client in those proceedings," Maj. Op. at 6, I dissent.

The majority's conclusion that there are "no First Amendment rights on the part of the attorney participating in a judicial proceeding," Maj. Op. at 5, first rests on the inference that, because speech in a courtroom setting is subject to considerable restrictions, the First Amendment simply does not apply inside the courtroom. I believe, however, that such an analysis is deeply flawed. While the Supreme Court and others have, on several occasions, upheld restrictions on courtroom speech, they have done so, not because First Amendment rights do not exist in the courtroom, but rather because such restrictions served to protect a defendant's constitutional right to a fair trial and to preserve the dignity of the courts.[1] *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1081-82 (1991) (O'Connor, J., concurring) ("Lawyers are officers of the court and, as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech. *This does not mean, of course, that lawyers forfeit their First Amendment rights, only that a less demanding standard applies*.") (emphasis added, citation omitted); *United States v. Gurney*, 558 F.2d 1202, 1209-10 (5th Cir. 1977) (in affirming limitations on media access to court proceedings, explaining that, "[I]t is the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the accused receives a fair, orderly trial comporting with fundamental due process. The trial judge is therefore granted broad discretion in ordering the daily activities of his court. . . .Within this discretion, therefore, the district judge can place restrictions on parties, jurors, lawyers, and others involved with the proceedings *despite the fact that such restrictions might affect First Amendment considerations*. Sixth Amendment rights of the accused must be protected always.") (emphasis added, citations omitted). By stating that the First Amendment has no place in the courtroom, the majority also betrays the historical role of litigation as providing a forum for the expression of core political speech, *see In re Primus*, 436 U.S. 412, 428 (1978) (holding unconstitutional restrictions on non-profit organization's solicitation of prospective litigants, explaining that "[f]or the ACLU, as for the NAACP, 'litigation is not a technique of resolving private differences'; it is 'a form of political expression' and 'political association'") (quoting *NAACP v. Button*, 371 U.S. 415, 429, 431 (1963)), instead relegating attorney speech to a level heretofore occupied only by such speech as obscenity and fighting words.[2] Indeed, the motions filed in this case were not simply routine pre-trial motions, but rather were motions that raised matters of public concern, i.e., a publicly elected county prosecutor's alleged

---

[1] The majority's reliance on cases upholding rules of ethics and procedure that strictly limit attorney speech is also questionable because the case at bar does not involve a challenge to restrictions imposed by the court in its role as protector of fair-trial rights and guardian of the judicial process, but rather retaliation by a county prosecutor in his role as an adversary in the litigation.

[2] Indeed, the Supreme Court has recognized that even such lower-value speech as obscenity and fighting words is not wholly unprotected by the First Amendment. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 383-84 (1992) ("We have sometimes said that these categories of expression are not within the area of constitutionally protected speech, or that the protection of the First Amendment does not extend to them. Such statements must be taken in context, however, and are no more literally true than is the occasionally repeated shorthand characterizing obscenity as not being speech at all. What they mean is that these areas of speech can, consistently with the First Amendment, be regulated because of their constitutionally proscribable content (obscenity, defamation, etc.) — not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content.") (internal quotation marks and citations omitted).

conflict of interest and alleged "[o]utrageous and [u]nethical [c]onduct" in a criminal proceeding. Joint Appendix ("J.A.") at 7-8 (Compl. ¶ 10); *see* OHIO REV. CODE § 309.01 (providing for election of county prosecutors).

The majority also rests its holding that attorneys have no First Amendment rights in the courtroom on the belief that attorneys are simply like "other trial participants" who have no right "to interrupt a judicial proceeding with their questions or musings." Maj. Op. at 5. However, I do not share the view that an attorney is simply another trial participant or that an attorney's filing of motions seeking the dismissal of criminal charges against his or her client is somehow akin to "interrupt[ions]" by "jurors, court reporters, bailiffs, or spectators." Maj. Op. at 5. An attorney's primary role is to serve as his or her client's representative and advocate in the judicial process, and it is for this very reason that an attorney's First Amendment rights in the courtroom must be zealously guarded.[3] The Supreme Court has long recognized that parties often need the assistance of a trained, professional advocate who will represent their interests throughout the judicial process. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 546 (2001) ("It is no answer to say the restriction on speech is harmless because, under LSC's interpretation of the Act, its attorneys can withdraw. This misses the point. The statute is an attempt to draw lines around the LSC program to exclude from litigation those arguments and theories Congress finds unacceptable but which by their nature are within the province of the courts to consider. The restriction on speech is even more problematic because in cases where the attorney withdraws from a representation, the client is unlikely to find other counsel."); *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) ("In returning to these old precedents, sounder we believe than the new, we but restore constitutional principles established to achieve a fair system of justice. Not only these precedents but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. . . . The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him."). However, the ability and willingness of persons to serve as advocates for their clients, particularly in matters adverse to the government, will be severely hampered if persons acting under color of state law are permitted to retaliate with impunity against attorneys who exercise their First Amendment rights on behalf of their clients. *See Velazquez*, 531 U.S. at 548 ("The attempted restriction is designed to insulate the Government's interpretation of the Constitution from judicial challenge. The Constitution does not permit the Government to confine litigants *and their attorneys* in this manner. We must be vigilant when Congress imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge.") (emphasis added).

In the end, I simply cannot agree with the majority that the First Amendment plays no role when a public official, acting under the color of state law, allegedly retaliates against an attorney

---

[3] I also do not believe that First Amendment retaliation claims brought by attorneys can be so quickly dismissed on the basis that attorneys are mere conduits for the speech of their clients. While an attorney is expected to present the views of his or her client rather than his or her own personal views during the course of representation, an attorney's act of agreeing to represent a client in the first instance reflects a decision by the attorney to exercise his or her First Amendment rights on behalf of the client. *See Sacher v. United States*, 343 U.S. 1, 9 (1952) ("Of course, it is the right *of counsel* for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling.") (emphasis added); *Canatella v. California*, 304 F.3d 843, 847, 852-54 (9th Cir. 2002) (viewing attorney's challenge to sanctions imposed for "vexatious litigation, filing of frivolous actions and appeals, and the use of delay tactics" as implicating attorney's First Amendment rights, concluding that attorney had standing because "he and others in his position face a credible threat of discipline under the challenged statutes, and may consequently forego their expressive rights under the First Amendment").

who brings to light potential misconduct by the public official. *See Gentile*, 501 U.S. at 1034-35 (Kennedy, J.) ("Nevada seeks to punish the dissemination of information relating to alleged governmental misconduct, which only last Term we described as speech which has traditionally been recognized as lying at the core of the First Amendment. . . . It would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted. . . . Public awareness and criticism have even greater importance where, as here, . . . the criticism questions the judgment of an elected public prosecutor. Our system grants prosecutors vast discretion at all stages of the criminal process. The public has an interest in its responsible exercise.") (internal quotation marks and citations omitted); *Barrett v. Harrington*, 130 F.3d 246, 262-63 (6th Cir. 1997) ("Barrett argues that his criticism of Judge Harrington, and his exposure of her wrongdoing is protected by the First Amendment. He is clearly on sound constitutional ground here. . . . Freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment."), *cert. denied*, 523 U.S. 1075 (1998); *United States v. Cooper*, 872 F.2d 1, 5 (1st Cir. 1989) ("We do not endorse the notion that an attorney can do or say anything and everything imaginable within the course of client representation under the guise of vigorous representation of his client. However, the fair administration of justice provides a valuable right to challenge in good faith the neutrality of a judge who appears to be biased against a party. Lawyers using professional care, circumspection and discretion in exercising that right need not be apprehensive of chastizement or penalties for having the advocative courage to raise such a sensitive issue to assure the client's right to a fair trial and the integrity of our system for administering justice."). Far from seeing the courtroom as a place where the First Amendment would "intrude," Maj. Op. at 4, I view the courtroom as a place where freedom of expression should be embraced and exercised with vigor.

Thus, although I agree that Plaintiff-Appellant Marc D. Mezibov has failed adequately to allege that Defendant-Appellee Mike Allen's retaliatory conduct was so severe as to deter a criminal defense attorney of ordinary firmness from continuing to file motions on behalf of his or her client, *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc), I respectfully dissent from the majority's alternative holding that Mezibov's conduct enjoyed no constitutional protection.