File Name:  05a0939n.06
Filed:  November 29, 2005

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No.  04-6365

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JUDITH E. LEWTER,
 *Plaintiff-Appellant*

            On Appeal from the
   v.          United States District Court for
            the Eastern District of Kentucky
MARGARET KANNENSOHN,
FAYETTE COUNTY ATTORNEY
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY
 *Defendant - Appellee*

              /

BEFORE:  KEITH, KENNEDY and BATCHELDER, Circuit Judges.

KENNEDY, Circuit Judge. Plaintiff Judith E. Lewter, an assistant county attorney, brought this claim of retaliation against Defendant Margaret Kannensohn, the county attorney, pursuant to 42 U.S.C. §1983 alleging she was retaliated against for exercising her First Amendment rights.  The Defendant filed a motion for summary judgment and the Plaintiff filed a motion for abeyance.  The district court granted the Defendant's motion and denied the Plaintiff's finding the Plaintiff had not established that a constitutional violation had occurred.  On appeal, Plaintiff argues the district court erred by (1) finding her speech was not protected under the First Amendment, (2) granting the Defendant summary judgment before she had an opportunity to conduct more discovery, and (3) holding the defendant was entitled to qualified immunity.   For the following reasons, we affirm.

**BACKGROUND**

From October 7, 1998, until May 7, 2003, Plaintiff Judith E. Lewter ("Lewter") worked as an assistant county attorney for Defendant Margaret Kannensohn ("Kannensohn"), the Fayette County Attorney. Lewter represented the Commonwealth of Kentucky, prosecuting cases for the County Attorney's Office in Fayette District Court.

On May 7, 2003, Kannensohn discharged Lewter. At that time, Kannensohn told Lewter she was being discharged because of an in-court verbal exchange between Lewter and Fayette District Court Judge Kevin M. Horne. That exchange involved a felony prosecution on a kidnaping charge. Lewter first agreed that the charge should be dismissed based on information that the complainant no longer wished to press charges. Judge Horne granted the dismissal. Afterwards, Lewter encountered the police officer who made the arrest and he complained that the charge was based on police action, rather than a private complaint, and that the case was very serious. Lewter then returned to the courtroom and asked Judge Horne to reinstate the charges, but Judge Horne, who had already moved onto another case, denied her motion. Lewter, however, misunderstood and thought her motion was granted. Soon after realizing her mistake, Lewter again returned to the courtroom and again asked the judge to reconsider his ruling. And, yet again, Judge Horne declined. He did, however, inform Lewter that she could take the case to the Fayette County Grand Jury.

Kannensohn was contacted later that day about Lewter's conduct and repeated attempts to convince the judge to alter his ruling. Kannensohn also interviewed several county attorneys who appeared before Judge Horne later that day and who said that the judge was displeased at Lewter's refusal to accept his ruling.

2

Subsequently, at an unemployment hearing, Kannensohn named another reason for Lewter's discharge. Prior to the exchange discussed above, Kannensohn had received a forwarded email from another Fayette District Judge, Maria Ransdell. In that email to Judge Ransdell, Lewter expressed her displeasure at the way Judge Ransdell handled the sentencing of a particular case, *Devier*, and at the way Judge Ransdell overruled her objections to bond reductions. Lewter then requested permission to speak with the jurors in the *Devier* case. Judge Ransdell considered the email a prohibited *ex parte* communication as the content of the email involved pending cases. Initially, Kannensohn decided to only reprimand Lewter for the email. However, after learning about the courtroom exchange with Judge Horne, Kannensohn discharged her.

On May 6, 2004, Lewter filed the instant action in the District Court seeking reinstatement or front and back pay, punitive damages and attorneys fees as she claims she was discharged in retaliation for exercising her First Amendment right to freedom of speech. On July 12, 2004, Kannensohn filed a motion for summary judgment, seeking a dismissal of Lewter's claims based on qualified immunity and failure to establish a constitutional violation. Lewter then filed a motion to hold Defendant's motion for summary judgment in abeyance until discovery was complete. The district court granted Kannensohn's motion for summary judgment and denied Lewter's motion for abeyance.

### STANDARD OF REVIEW

We review the grant or denial of summary judgment de novo. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). Summary judgment is proper if the moving party shows there is "is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

3

**ANALYSIS**

**I. §1983 Claim**

Lewter contends the district court erred in holding that she did not engage in speech protected by the First Amendment. We have outlined the three elements that form the basis of a claim for unlawful retaliation in violation of the First Amendment. These elements are:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir. 1998).

The Supreme Court has set out a two-part test for determining when the discharge of a public employee violates the First Amendment. *See Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731 (1968); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684 (1983). The first question is whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146. If the speech is found to address a matter of public concern, then the court must apply a balancing test to determine if "the interests of the [employee] as a citizen, in commenting on matters of public concern, outweighs the employer's interest in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568. This is an issue of law for the court to decide. *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004) (*citing Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir. 2003). Kannensohn has the burden of showing that her interest in efficiency outweighs Lewter's interest in speech. *Rodgers*, 344 F.3d at 601. The district court held that neither the in-court discussions with Judge Horne, nor the *ex*

4

*parte* email to Judge Ransdell involved matters of public concern and that Kannensohn's interests outweighed Lewter's interest. For the following reasons, we agree.

**A. Protected Speech**

Lewter first contends that the district court erred in finding that her in-courtroom discussion with Judge Horne, where Lewter repeatedly asked the judge to reinstate the charges she had previously asked to be dismissed, was not protected speech.

In finding this speech was not protected, the district court noted the communications took place in a courtroom where "courts have noted that attorneys' have limited First Amendment rights in order to maintain courtroom decorum". See J.A. at 16.

This Circuit recently reaffirmed that principle, but took it one step further, holding that attorneys' First Amendment rights are not just limited in a courtroom, but are actually non-existent. *See Mezibov v. Allen,* 411 F.3d 712 (6th Cir. 2005). In *Mezibov*, an attorney brought a §1983 claim arguing that he was retaliated against for exercising his First Amendment rights because the opposing counsel, a county prosecutor, repeatedly publicly criticized his in-court behavior. We discussed the uniqueness of the courtroom forum noting that an "attorney's speech in court and in motion papers has always been tightly cabined by various procedural and evidentiary rules, along with the heavy hand of judicial discretion." *Id.* at 717. We held that because attorneys are usually not "engaged in free expression," but, by "filing motions and advocating for [a] client" attorneys are simply "doing [their] job", *id.* at 720, and because attorneys voluntarily agree to relinquish their rights in judicial proceedings, "in the context of the courtroom proceedings, *an attorney retains no personal First Amendment rights* when representing his client in those proceedings." *Id.* at 720-21 (emphasis added).

5

As we find this case to be controlling, we agree with the district court that Lewter's in-court communications to Judge Horne are not protected speech. Lewter was not engaged in constitutionally protected speech, but rather "was simply doing [her] job". *Id.* at 720.

Next, Lewter contends the district court erred in holding that the email she sent to Judge Ransdell was not protected speech. That email stated:

> I was quite shocked at the Devier sentencing yesterday. In my opinion, the sentence meted out made a mockery of the jury system, the prosecution of crimes, and the work police do. I do not believe that 30 days is going to teach Devier anything. He seemed to think it was all quite humorous. I also do not understand why you overruled my motion for a $500 appeal bond. That is a reasonable bond. He was found guilty of fleeing/evading the police!!!!! I am also confused as to why you were not concerned that he will be on a supervised probation and has plans to move out of state. You have never let anyone go on supervised probation that is going out of state! He may have a college degree, but he's still a convicted criminal.
> This case was especially hard to take coming on the heels of the Lopez case where you lowered the jury penalty from 21 days to 10 days based on the fact that he was a fine upstanding citizen. You had no evidence of that that you could consider.
> I have also noticed lately that almost always, without exception, you overrule my objections to bond reductions.
> I used to enjoy being in your division, and in fact have been [the] only prosecutor to request to stay in your division. I've always thought you were fair because you listen to both sides. True. But if one side is always ruled against, that isn't fair. I want my work to make a difference and to mean something. It can't mean anything if juries are only allowed to give minimum sentences.
> I would also like your permission to speak with the Devier jurors after their jury service is finished.

J.A. at 75-76. Lewter argues that this is protected speech because she was criticizing Judge Ransdell's alleged leniency to criminal defendants.

However, at issue is not whether any incidental part of this speech is a matter of public concern, but rather, whether the "point" or "focus" or "communicative purpose" of the speech is "related to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146; *Farhat*, 370 F.3d at 592 (finding this circuit has "distilled the 'public concern' test by stating

that the court must determine: the 'focus' of the speech"); *Rodgers,* 344 F.3d at 600 (courts are to look for the "point or focus of the speech in question"); *Taylor v. Keith,* 338 F.3d 639, 645 (6th Cir. 2003) (noting that proper inquiry is the "point of the speech" and "what the speaker intended to communicate"); *Dambrot v. Central Mich. Univ.,* 55 F.3d 1177, 1187-88 (6th Cir. 1995) (court must look to the "point" of the speech and the "communicative purpose" of the speaker); *Rahn v. Drake Ctr., Inc.,* 31 F.3d 407, 412-13 (6th Cir. 1994) (court must examine "complete record" and determine "focus" of statement, *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995).

Whether the point or focus of the speech addresses a matter of public concern, is to be "determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48. Turning to the case at bar, the form of the speech is that it is an ethically prohibited *ex parte* email. *See* Ky Sup. Ct. R. 3.130(3.5) (stating that "a lawyer shall not: (a) Seek to influence a judge.., (b) Communicate ex parte with such a person as to the merits of the cause except as permitted by law"). The context - Lewter is upset about the way Judge Ransdell has handled certain cases - and the content - a list of grievances and a request to speak to the jury because Lewter was not satisfied with the result in that case - suggest the "point" of the speech was not a matter of public concern, but rather just an "employee beef." Such an "employment beef" is not protected speech. *See Farhat*, 370 F.3d at 593 (finding appellant's letters were his own "personal 'beef'" and thus not matters of public concern); *Rahn,* 31 F.3d at 413 (finding the plaintiff's speech did not touch on matters of public concern as it was nothing more than the "quintessential employee beef").

In sum, the form, context, and content of this *ex parte* email indicate the "point" of the email was to not to expose any wrongdoing involving matters of public concern, but to express Lewter's

own personal "beef" with Judge Ransdell. Any references to matters of public concern were "passing references that were incidental to the message conveyed." *Farhat*, 370 F.3d at 593 (internal quotations omitted). Thus, we affirm the district court's ruling that the ex parte email is properly not considered protected speech under the First Amendment.

**B. Pickering Balancing**

Under the second part of the *Connick* analysis, even if the speech at issue did involve matters of public concern, it is still "not protected" unless Lewter's interests in commenting on matters of public concern outweigh the Kannensohn's interest in promoting the efficiency of the public services her office performs. *See Pickering*, 391 U.S. at 568. The district court held the Kannensohn met her burden of showing that her interest in efficiency outweighs the plaintiff's interest in speech.

In striking the balance between the State's and the employee's respective interests, this court has stated that it will "consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Kentucky,* 24 F.3d 1526, 1536 (6th Cir. 1994), *cert. denied,* 513 U.S. 947, 115 S.Ct. 358, (1994) (citing *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891 (1987).

Lewter asserts her interest is in "ensuring pursuit of criminal charges and sentencing." Kannensohn asserts her interests are in promoting an efficient workplace by maintaining good relations with the judges in Fayette County District Court, before which the Fayette County Attorney's office practices on a regular basis. The public service which that office performs is the prosecution of criminals in county court, something that cannot be done efficiently when its

8

employees are engaging in prohibited *ex parte* communications and criticizing the judges before whom the office practices. Kannensohn's interest in maintaining a good reputation with the county court easily outweighs Lewter's interest in engaging in unethical communications.

Since we find both of Lewter's communications unprotected under the First Amendment we not discuss the *Pickering* balancing test. We address it, however, to emphasize that Kannensohn need not show actual estrangement of relations with the judges in this case. Lewter claims that no actual estrangement happened and further requests discovery on this issue. Yet, when we are faced with a relationship like that between a prosecutor's office and a court, where trust and confidence are "essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick*, 461 U.S. at 151-52. It is not necessary "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Id.* at 152. We agree with the district court that the county attorney has a great interest in maintaining a reputation for trustworthiness and the confidence of the courts before which it practices and therefore find that Kannensohn need not show the office was actually estranged from the county court.

## II. Motion for Abeyance

Lewter also claims the district court erred by denying her motion for abeyance. However, the Lewter concedes in her brief that if we agree with the district court that it is not clearly established that the Kannensohn's actions violated Lewter's constitutional rights, then additional discovery is not necessary. (Appellant's Br. at 46.) As we do not even find either the email or the in-court discussion to be protected speech, Kannensohn's actions do not violate a clearly established

9

constitutional right. Thus, we agree that additional discovery would have been unnecessary and this motion was properly denied.

III. **Qualified Immunity**

Finally, Lewter argues that the district court erred in granting Kannensohn qualified immunity. Where qualified immunity is asserted, the court must first determine if there is a dispute of material fact over "whether the plaintiff in a civil action has demonstrated the violation of a constitutionally protected right" and second, "whether the right is so 'clearly established' that a reasonable official would understand that what he is doing violates that right.'" *Charvat*, 246 F.3d at 616 (quoting *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996)).

As we found that Lewter's First Amendment rights were not violated because she did not engage in protected speech, we also affirm the district court's ruling that Kannensohn was entitled to qualified immunity.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the decision of the district court.

**KEITH, Circuit Judge, concurring in the judgment, but dissenting as to the reasoning employed in Part I. A.**

I concur in the judgment reached in this case, but I cannot agree with the reasoning employed in Part I. A. regarding why Lewter's in-court discussion with Judge Horne is not protected speech. Specifically, I strongly disagree with the majority opinion's reliance on *Mezibov* and its holding that "in the context of the courtroom proceedings, *an attorney retains no personal First Amendment rights* when representing his client in those proceedings." Maj. Op. at 5 (quoting *Mezibov*, 411 F.3d at 720-21) (emphasis added). Therefore, I dissent from this portion of the majority opinion.

It is one thing to say that attorneys' First Amendment rights are limited or circumscribed in the courtroom as a result of their roles as advocates for their clients, but it is another thing entirely to say that those rights are completely non-existent. The *Mezibov* holding, rendered by a 2-1 panel of this court, is an unwarranted extension of prior law. Thus, I cannot condone reliance upon it in the instant case. Instead, I agree with Judge Moore's dissent in *Mezibov* stating, "[a]n attorney's primary role is to serve as his or her client's representative and advocate in the judicial process, and it is for this very reason that an attorney's First Amendment rights in the courtroom must be zealously guarded." 411 F.3d at 724.

Not only do I find the majority's reliance on *Mezibov* objectionable because it infringes upon a fundamental right, I also disagree with the majority's reliance on *Mezibov* where such reliance is unnecessary to dispose of the instant action. Specifically, the case before us raises the question whether Lewter, a public employee, was discharged in retaliation for exercising her First Amendment rights. As the majority opinion acknowledges, the United States Supreme Court has established a two-part test for determining when the discharge of a public employee violates the First Amendment.

Maj. Op. at 4 (citing *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731 (1968); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684 (1983)). This two-part test is commonly referred to as the *Pickering* balancing test and its use in the instant case adequately disposes of the issues before this Court. As articulated by the majority, the two-part test operates as follows:

> [t]he first question is whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146. If the speech is found to address a matter of public concern, then the court must apply a balancing test to determine if "the interests of the [employee] as a citizen, in commenting on matters of public concern, outweighs the employer's interest in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

Maj. Op. at 4. First, in this case, the facts regarding the in-court discussion between Lewter and Judge Horne would not support a finding that her speech was a matter of public concern. Second, even if we were to assume that Lewter's speech was a matter of public concern, her interest in continuing to argue her point with Judge Horne when she could have achieved the desired result through another avenue – and still ensure justice was done – does not outweigh the County Attorney's interest in ensuring that one of her employees did not jeopardize the office's relationship with a district judge they appeared before regularly. Therefore, under either prong of the two-part test, Lewter's speech in this instance is not protected, and thus, we do not need to rely on *Mezibov* to reach the correct judgment in this case. Because this case arises in the context of an alleged retaliatory discharge, we should adhere to and apply the *Pickering* balancing test.

In my view, this Court should only encroach upon a fundamental right when absolutely necessary. Instead of following this course, the *Mezibov* court issued an overbroad holding that unnecessarily impinges a fundamental right, and thus, I cannot agree with the use of such a holding in the instant case. My conviction that this panel is incorrect to rely on *Mezibov* is strengthened by

the fact that there exists a long-standing standard – *Pickering* balancing – for deciding the issue raised by the in-court discussion between Lewter and Judge Horne. This test should be employed in the first instance before resorting to an overreaching precedent.

Therefore, based on the aforesaid reasons, I strongly dissent from the portion of Part I. A. of the majority opinion that relies on *Mezibov*'s holding that "in the context of the courtroom proceedings, *an attorney retains no personal First Amendment rights* when representing his client in those proceedings." 411 F.3d at 720-21 (emphasis added).